# United States Court of Appeals
## For the First Circuit

No. 04-1344

CHAMEL MAKHOUL MAKHOUL,

Petitioner,

v.

JOHN ASHCROFT, ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER

OF THE BOARD OF IMMIGRATION APPEALS

Before

Selya, Circuit Judge,

Coffin and Cyr, Senior Circuit Judges.

Saher J. Macarius on brief for petitioner.
Peter D. Keisler, Assistant Attorney General, Civil Division,
Linda S. Wendtland, Assistant Director, Office of Immigration
Litigation, and Norah Ascoli Schwarz, Senior Litigation Counsel,
Office of Immigration Litigation, on brief for respondent.

October 28, 2004

**SELYA**, **Circuit Judge**.  The petitioner, Chamel Makhoul Makhoul, a native and citizen of Lebanon, seeks review of a final order of the Board of Immigration Appeals (BIA) denying his application for asylum, withholding of deportation, and protection under Article III of the Convention Against Torture (CAT).  Concluding, as we do, that the BIA's order is supported by substantial evidence, we affirm.

## I.

### Background

The petitioner, now twenty-two years of age, arrived at Miami International Airport on March 15, 2001.  He had no visa.  Instead, he presented his Lebanese passport at the immigration counter and requested asylum.  Agents of the Immigration and Naturalization Service (INS) took him to a detention facility.[1]  In a March 23 interview with an asylum officer, the petitioner claimed that Syrian soldiers had thrice arrested him during demonstrations against the Syrian occupation of Lebanon.  He also claimed that the secret police had arrested and beaten him in February of 2001 for distributing anti-Syrian pamphlets.

Based on this account, the asylum officer tentatively determined that the petitioner had a credible fear of persecution

---

[1]The Homeland Security Act of 2002, Pub. L. 107-296, § 471, 116 Stat. 2135, 2205 (codified as amended at 6 U.S.C. § 291(a)), abolished the INS and transferred its duties to the Department of Homeland Security.  See Lattab v. Ashcroft, 384 F.3d 8, 13 n.2 (1st Cir. 2004).  For simplicity's sake, we refer throughout to the INS.

on account of his political opinion.  The INS duly initiated removal proceedings and served him with a notice to appear in the Immigration Court.  Pending the resolution of the petitioner's status, the INS paroled him into the United States.  See 8 C.F.R. § 212.5(c) (2004).  Once on parole, the petitioner traveled to Boston to live with family members.  Appearing telephonically at a hearing before the Immigration Court, sitting in Florida, the petitioner conceded deportability but sought asylum, withholding of deportation, and relief under CAT.  The Immigration Court then granted the petitioner's unopposed motion to transfer the proceedings to Boston.  See 8 C.F.R. § 1003.20.

Shortly thereafter, the petitioner recanted the story he had told at his asylum interview.  In a declaration accompanying his asylum application, he stated only that he had posted anti-Syrian political statements on an Internet chat site and had downloaded provocative political material.  At a hearing before an immigration judge (IJ) on December 5, 2002, the petitioner admitted that he had concocted the original tale about arrests and beatings.  He attributed the fabrication to the advice of a self-styled immigration consultant.

Having abandoned his fictitious claim of past persecution, the petitioner suggested that he had a well-founded fear of future persecution on account of his political opinion.  This suggestion traveled along a circuitous path.  The petitioner

testified that he had opposed the Syrian occupation of Lebanon for some time and had expressed his opposition in Internet chat rooms. In addition, the petitioner's friend, Elias El Gobaly, had asked him to download a brochure calling for the ouster of Syrian forces from Lebanon and featuring a picture of Michel Aoun (the exiled former president of Lebanon and the inspirational figurehead for this virtual protest movement). The petitioner complied, giving multiple copies of the flier to Gobaly, who then distributed them.

The Syrians arrested Gobaly in December of 2000. The petitioner assumed that the Syrians would torture Gobaly and would force him to reveal the petitioner's role in the production of the brochures. Fearful of these imagined consequences, the petitioner fled the country.

The record is silent both as to what treatment Gobaly received and as to what information (if any) Gobaly might have provided to his captors. According to one of the petitioner's brothers (who still resides in Lebanon), the Syrians eventually released Gobaly. The petitioner admitted that he did not know whether Gobaly had named names or under what conditions Gobaly had been detained. Despite these uncertainties, the petitioner expressed fear that the authorities would arrest and torture him if he dared to return to Lebanon.

The IJ found little probative value in this reconstructed narrative. Nor did the petitioner's presentation of documentary

evidence detailing abusive conduct by Syrian forces toward outspoken supporters of the former president fill this void; the IJ concluded that the petitioner had not brought himself within this sphere. After all, the petitioner himself had never been arrested, detained, or brutalized. Thus, his belief that the Syrians sought his capture rested entirely upon Gobaly's arrest. But, the IJ noted, the petitioner had proffered no evidence illuminating the circumstances surrounding Gobaly's detention, nor had he adduced any proof about what Gobaly might (or might not) have revealed to the authorities. Accordingly, the notion that the Syrians would be on the lookout for the petitioner was, in the IJ's words, "highly speculative."

Although the IJ did not make an explicit credibility finding, her skepticism was evident. She reasoned that something more mundane than fear of persecution likely drove the petitioner's desire to emigrate to the United States. The petitioner's father had been in Boston since 1993 and was seeking to become a lawful permanent resident. See 8 U.S.C. § 1255; 8 C.F.R. § 204.5. The petitioner indicated that he had hoped to qualify for permanent residency as his father's dependent and admitted that he had emptied out his father's store in Lebanon before leaving the country. The IJ believed that these admissions supported a plausible inference that the family had made a collective decision

-5-

to relocate to the United States and that the petitioner's real intention was to join them.

Based on these findings, the IJ held that the petitioner had not established a well-founded fear of future persecution. She thus denied the petitioner's applications for asylum and withholding of deportation. Noting that the Syrian authorities had never laid a finger on the petitioner, the IJ also ruled that the petitioner had wholly failed to show that he would face likely torture if removed to Lebanon. Consequently, the IJ rejected the petitioner's CAT claim as well and ordered him removed to Lebanon.

The petitioner appealed. The BIA summarily affirmed the IJ's decision on February 6, 2004. This petition for judicial review followed.

## II.

### Discussion

In order to become eligible for asylum, an alien must establish that he is a refugee. See 8 U.S.C. § 1158(b)(1); 8 C.F.R. § 208.13(a); see also Laurent v. Ashcroft, 359 F.3d 59, 63 (1st Cir. 2004). A refugee is a person unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); see Laurent, 359 F.3d at 63-64. A showing of past persecution creates a presumption that an

applicant's fear of future persecution is well-founded. See 8 C.F.R. § 208.13(b)(1); see also Fergiste v. INS, 138 F.3d 14, 18 (1st Cir. 1998). In the absence of a showing of past persecution, the asylum applicant bears the burden of demonstrating that his fear of future persecution is well-founded. See Laurent, 359 F.3d at 65.

When an IJ rejects an alien's application for asylum and orders his removal, the BIA has jurisdiction to review the order upon the filing of a timely appeal. See 8 C.F.R. §§ 1003.1(b), 1240.15; see also Nugent v. Ashcroft, 367 F.3d 162, 165 (3d Cir. 2004). "Where, as here, the BIA conducts a de novo review of the record, independently validates the sufficiency of the evidence, and adopts the IJ's findings and conclusions, the IJ's findings become the BIA's." Laurent, 359 F.3d at 64 n.3. We review the BIA's order pursuant to the authority conferred by 8 U.S.C. § 1252(b).

Our review is deferential. In immigration cases, the court of appeals applies the familiar "substantial evidence" standard of review. It must uphold the BIA's decision "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Put another way, a reviewing court can reverse the BIA only if the record unequivocally indicates error. INS v. Elias-Zacarias, 502 U.S. 478, 481 & n.1 (1992). Indeed, if an asylum applicant's fact-based challenge to

an unfavorable decision is to succeed, "the administrative record, viewed in its entirety, must compel the conclusion that he is asylum-eligible."  Aguilar-Solis v. INS, 168 F.3d 565, 569 (1st Cir. 1999) (emphasis omitted).

Against this backdrop, we turn to the specifics of the petitioner's claims.  For the first time on appeal, the petitioner contends that he has suffered past persecution.[2]  This argument starts with the premise that the Syrian occupiers exercise brutal control over the Lebanese people.  That premise is supported by documentary evidence in the record and we accept it.  Building on this uncontroversial foundation, the petitioner suggests that Gobaly's arrest placed him (the petitioner) in a state of intense anxiety, exacerbated by a fear that his own arrest and abuse were imminent.  From this, the petitioner argues that he experienced psychological torment, which amounted to "persecution" in the statutory sense.

As a theoretical matter, we acknowledge that, under the right set of circumstances, a finding of past persecution might rest on a showing of psychological harm.  See, e.g., Miljkovic v. Ashcroft, 376 F.3d 754, 756 (7th Cir. 2004); Knezevic v. Ashcroft, 367 F.3d 1206, 1211-12 (9th Cir. 2004); Ouda v. INS, 324 F.3d 445, 453-55 (6th Cir. 2003); see also Boykov v. INS, 109 F.3d 413, 416

---

[2]The petitioner did, of course, raise a different claim of past persecution in his initial asylum interview.  That claim, however, was premised on falsehoods, and he has since abandoned it.

(7th Cir. 1997) (expressing willingness, in rare cases, to regard mere threats as persecution).  Here, however, the issue of past persecution is not fairly before us.  The controlling statute, 8 U.S.C. § 1252(d)(1), provides that review of a final removal order is only permissible if "the alien has exhausted all administrative remedies available to the alien as of right."  We have interpreted this statute to mean that theories not advanced before the BIA may not be surfaced for the first time in a petition for judicial review of the BIA's final order.  See Ravindran v. INS, 976 F.2d 754, 761 (1st Cir. 1992); Alvarez-Flores v. INS, 909 F.2d 1, 8 (1st Cir. 1990).  This same principle of preclusion extends to claims not raised before the IJ.  See Debab v. INS, 163 F.3d 21, 26 (1st Cir. 1998).

This template is dispositive of the petitioner's belated claim of past persecution.  The petitioner did not raise this contention either in the declaration that accompanied his asylum application or in his testimony before the IJ.  Nor did he, in either of those fora, assert a claim of psychological persecution.  Given these procedural defaults, we decline to entertain his virgin claim of past persecution in this venue.

This leaves the petitioner's claim that he harbors a well-founded fear of future persecution.[3]  Such a claim has both

---

[3]An asylum applicant who can establish that he has suffered past persecution is presumed to be a refugee for purposes of eligibility.  This presumption shifts the burden to the government

subjective and objective components. To establish asylum eligibility on this ground, an applicant must demonstrate both that he genuinely fears persecution if he is deported to his homeland and that his fear is objectively reasonable. Laurent, 359 F.3d at 65. An applicant typically will show genuineness through his own credible testimony. See, e.g., Balogun v. Ashcroft, 374 F.3d 492, 499 (7th Cir. 2004). The more difficult burden is to show that his fear is objectively reasonable. To carry this burden, the applicant need not prove that he will more likely than not suffer future persecution. See INS v. Cardoza-Fonseca, 480 U.S. 421, 450 (1987). Rather, his proof suffices if it shows that "a reasonable person in the asylum applicant's circumstances would fear persecution on account of a statutorily protected ground." Aguilar-Solis, 168 F.3d at 572.

In this instance, the petitioner makes two arguments to support his insistence that he has a well-founded fear of persecution if deported. We deal with these arguments separately.

The petitioner's first argument is that he fears persecution on account of his membership in a particular social group. This argument is hopeless. For one thing, he has failed to

to show that conditions in the applicant's home country have changed to such an extent that he has no well-founded fear of future persecution. 8 C.F.R. § 208.13(b)(1); see Fergiste, 138 F.3d at 18. Because the petitioner has not established past persecution, he must carry the devoir of persuasion on the issue of whether he has a well-founded fear of future persecution. See U.S.C. § 1158(b)(1); 8 C.F.R. § 208.13(a).

-10-

identify the particular social group with which he claims to be affiliated. For another thing, throughout the proceedings below the petitioner sought asylum solely on the basis that he would be persecuted for his political opinion. Because he neglected to raise the "social group" issue before the IJ, that issue is procedurally defaulted. See Debab, 163 F.3d at 26.

The petitioner's second argument — that he fears future persecution on the basis of political opinion — forms the crux of his asylum application. To satisfy the subjective component of the well-founded fear standard, the petitioner testified as to the genuineness of his concern. The IJ, without explicitly impugning the petitioner's credibility, suggested obliquely that his efforts to benefit derivatively from his father's quest to become a lawful permanent resident and the fact that he had spent his final months in Lebanon cleaning out the family store may have had more to do with his flight to the United States than his fear of future events in Lebanon.

The petitioner argues that, in the absence of an adverse credibility finding, these facts are irrelevant to a resolution of whether his fear of persecution is genuine. We do not agree. What is in a person's mind cannot be measured with scientific precision, and if the evidence fairly suggests that a reason other than a fear of persecution provides the primary impetus for an alien's desire to seek asylum, that certainly bears on the genuineness of his

-11-

subjective claim. See, e.g., Lin v. Ashcroft, 371 F.3d 18, 22 (1st Cir. 2004); Disu v. Ashcroft, 338 F.3d 13, 16 (1st Cir. 2003).

In all events, the record is less than pellucid on this point. It is hard to tell whether the IJ's decision implicitly incorporates a finding that the petitioner's fear was less than genuine. Because that question is open to interpretation, we leave it unresolved. In this case, the petitioner's fear, even if subjectively genuine, is not well-founded.

The asserted fear of future persecution on account of political opinion stems from Gobaly's arrest and the possibility that Gobaly may have identified the petitioner as a dissident and/or participant in seditious activities. The petitioner buttresses the claim with documentary evidence of widespread human rights abuses in Lebanon. From these loosely related pieces of evidence, he invited the IJ to construct a chain of inferences suggesting the possibility that he would be persecuted if deported. The IJ declined the invitation.

We discern no hint of error. The chain of inferences fashioned by the petitioner is woven from gossamer strands of speculation and surmise. The petitioner himself has never been arrested, detained, or otherwise harmed. Indeed, there is absolutely no evidence that he has even attracted the attention of the Syrian occupiers. As far as anyone can tell, both he and his activities in cyberspace have gone unnoticed. This is not the

-12-

stuff of which objectively reasonable fears of future persecution are constructed. See Pieterson v. Ashcroft, 364 F.3d 38, 45 (1st Cir. 2004) (stating that lack of past arrest or detention made alien's chance of being individually targeted less likely); Ravindran, 976 F.2d at 759 (declining to credit alien's professed fear of being singled out for persecution in the absence of any evidence that authorities knew about his political activities). Here, moreover, the claim of possible future persecution is made even more tenuous by the total lack of any evidence that Gobaly himself was mistreated or even interrogated during his detention. From aught that appears, Gobaly never spoke to the authorities at any time about the assistance that the petitioner had privately rendered — or, at least, there is no proof that he did.

Another circumstance militates in favor of the IJ's ruling. The petitioner's level of political activism does not suggest that of a leader or even a follower. His political speech was limited to Internet chat rooms (fora that arguably provide a certain expectation of anonymity), and he engaged in just one solitary act of opposition by printing seditious leaflets. That act was carried out in the privacy of his own home. As the basis for an asylum application, this diminutive political profile tends to make the petitioner's asserted fear of persecution less reasonable. See Pieterson, 364 F.3d at 44-45.

-13-

To be sure, the supporting documentation paints a troubling portrait of the situation in Lebanon. Human rights obviously are not a high priority there. Still, over and above random atrocities, the most that this generic evidence shows is that Syrian forces have targeted political dissidents who have come to their attention. Absent a connection with the petitioner — an individual who has never publicly been involved in political protest and who, insofar as the record reflects, has never come up on the Syrians' radar screen — this evidence does not go very far toward showing objective reasonableness of the petitioner's professed fear. See Morales v. INS, 208 F.3d 323, 331 (1st Cir. 2000). Weighing this evidence in light of the record as a whole, we cannot say that the IJ was compelled to reach a conclusion favorable to the petitioner on the question of whether the latter's professed fear of future persecution on account of his political opinion was well-founded. See Aguilar-Solis, 168 F.3d at 572.

That effectively ends the matter. Because substantial evidence supports the denial of asylum, we need not address the petitioner's other claims. We explain briefly.

A claim for withholding of deportation demands that the alien carry a more stringent burden of proof than does an asylum claim. See 8 U.S.C. § 1231(b)(3)(A). Thus, if an alien cannot establish asylum eligibility, his claim for withholding of

deportation fails a fortiori.  See Ipina v. INS, 868 F.2d 511, 515 (1st Cir. 1989).

The petitioner's skeletal claim for relief under CAT fares no better.  What we have written to this point demonstrates that the CAT claim is beyond redemption.  At any rate, the petitioner has wholly failed to develop any argumentation on that claim before us.  Consequently, we deem that portion of his petition waived.  See Aguilar-Solis, 168 F.3d at 574; Athehortua-Vanegas v. INS, 876 F.2d 238, 241 (1st Cir. 1989).

## III.

### Conclusion

We need go no further.  Amid a sea of global violence, Congress dug a narrow channel of relief for those who face possible future persecution.  The statutory requirement that an applicant for asylum show a well-founded fear of persecution demands more than this petitioner has mustered.  Since the IJ's decision and the BIA's order rest on a plausible rendition of the record, the petition for review must be denied and dismissed.

**It is so ordered**.