# United States Court of Appeals
## For the First Circuit

No. 09-1022

SANTOS LOPEZ PEREZ ET AL.,

Petitioners,

v.

ERIC H. HOLDER, JR., UNITED STATES ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER

OF THE BOARD OF IMMIGRATION APPEALS

Before

Howard, Ripple[*] and Selya, <u>Circuit Judges</u>.

<u>Lidia M. Sanchez</u> on brief for petitioners.
<u>Tony West</u>, Assistant Attorney General, Civil Division, <u>Linda S. Wernery</u>, Assistant Director, Office of Immigration Litigation, and <u>Susan Bennett Green</u>, Trial Attorney, Office of Immigration Litigation, on brief for respondent.

November 20, 2009

---

[*]Of the Seventh Circuit, sitting by designation.

**SELYA**, **Circuit Judge**.  This is a petition for judicial review of a final order of the Board of Immigration Appeals (BIA) denying relief to, and commanding the removal of, certain petitioning aliens.  After careful consideration, we deny the petition.

The background facts are straightforward.  Santos Lopez Perez (the petitioner) is a Guatemalan national who entered the United States, without inspection, in 1994.  Later that year, she asked for asylum.  Her claim rested on three pillars.  First, she asserted that, while walking to church in her home town (outside of Quetzaltepeque), she often observed mutilated corpses in plain sight.  Second, she asserted that, after she left Guatemala, her husband (who suffers from Parkinson's disease) was victimized by relatives; the relatives stole from him and threw rocks at the house in which he lived.  Third, she asserted that, if she were repatriated, she would be at risk of grave harm because Guatemalans perceive those who return from the United States as wealthy (and, thus, ripe for plunder).

After a long, unexplained hiatus, federal authorities initiated removal proceedings in 2002.  The petitioner conceded removability and cross-applied for asylum, withholding of removal,

and protection under the United Nations Convention Against Torture (CAT).[1]

On June 1, 2007, the petitioner's case went forward before an immigration judge (IJ). At the hearing, the petitioner testified to the facts recounted above. She also expressed a fear of gang violence should she be deported to Guatemala and stated, without corroboration, that in 2006 gang violence had taken the lives of two of her cousins. Finally, country conditions reports were introduced into evidence.

Following the hearing, the IJ found the petitioner's testimony credible but concluded that it did not substantiate a cognizable claim of past persecution. The IJ further found that the incidents described by the petitioner did not transpire on account of a statutorily protected ground and that the petitioner's fear of future persecution, though genuine, was not objectively reasonable. Consequently, the IJ rejected the petitioner's quest for asylum.

The IJ proceeded to deny withholding of removal because the petitioner had not shown that, upon her return, she would face

---

[1] The government simultaneously sought removal of the petitioner's adult sons, Milton Abizai Melchor and Mynor Abel Melchor, each of whom had entered the United States illegally in 2000. The sons are listed as derivative beneficiaries of the petitioner's application for relief and have joined this petition for judicial review. Because their rights are dependent on those of the petitioner, we analyze only the petitioner's claims. Our decision is, of course, binding on all parties.

a clear probability of danger to her life or liberty on account of a statutorily protected ground. Finally, the IJ rebuffed the CAT claim because the petitioner had provided no probative evidence that she would be tortured upon returning to her homeland.

The petitioner appealed. In affirming, the BIA adopted the IJ's findings and added that the petitioner had neither suffered past harm equivalent to persecution nor demonstrated a well-founded fear of future persecution. This timely petition for judicial review followed.

Because the BIA adopted the IJ's opinion as well as commenting separately, we review the two decisions as a unit. See Sok v. Mukasey, 526 F.3d 48, 52 (1st Cir. 2008). Our assessment of them proceeds in light of the deferential substantial evidence rule. See Makhoul v. Ashcroft, 387 F.3d 75, 79 (1st Cir. 2004). This means that, as long as the agency's findings of fact are "supported by reasonable, substantial, and probative evidence on the record considered as a whole," an inquiring court must honor them. INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). In the absence of an error of law — and we discern none here — the court will grant a petition for review only if the record compels a conclusion contrary to that reached by the agency. See Pan v. Gonzales, 489 F.3d 80, 85 (1st Cir. 2007).

There is a threshold issue here: the petitioner argues that the BIA did not adequately articulate a reasoned basis for its

-4-

decision. In particular, she points to the BIA's separate comment, which she characterizes as comprising only a single "conclusory" sentence.

This argument is perplexing. The BIA's decision explicates its rationale (if succinctly). It references the petitioner's testimony about witnessing dead bodies along the roadside and notes that the incidents were not targeted at the petitioner. Furthermore, the decision specifically records the BIA's agreement with the IJ that the harm that the petitioner claims to have suffered in Guatemala does not "ris[e] to the level of 'persecution'" and, in all events, lacks "a nexus to a protected ground." The decision also declares that trepidation about gang violence does not suffice to constitute a well-founded fear of future persecution. Relatedly, the BIA specifically endorses the IJ's conclusion that neither "be[ing] perceived as wealthy after having lived in the United States for many years" nor being "a good target for criminal acts" changes the outcome.

These statements, though brief, reveal the essence of the BIA's decisional calculus. No more is exigible: an agency's decision must illuminate the path of its reasoning, but it need not do so at great length or in exquisite detail.[2]   See Albathani v.

---

[2] The petitioner cites a string of cases to bolster her contention that "a short conclusory statement with no analysis on the key issue in a case is unacceptable." Petitioner's Br. at 7. Without exception, these cases are readily distinguishable. See, e.g., Filja v. Gonzales, 447 F.3d 241, 252 (3d Cir. 2006)

INS, 318 F.3d 365, 377 (1st Cir. 2003); Chen v. INS, 87 F.3d 5, 7-8 (1st Cir. 1996).

Here, moreover, the BIA expressly adopted the IJ's findings and reasoning. Adoption is a permissible adjudicative practice for an appellate tribunal. See 8 C.F.R. § 1003.1(e)(4) (allowing affirmance by the BIA without opinion); Disu v. Ashcroft, 338 F.3d 13, 18 (1st Cir. 2003) (rejecting due process challenge to affirmance without opinion). The BIA may "simply state that it affirms the IJ's decision for the reasons set forth in that decision." Chen, 87 F.3d at 8. It need not wax longiloquent merely to rephrase findings or reasoning of which it approves. Id.

Where adoption occurs, the IJ's decision must be considered as part of the BIA's decision. See Ru Xiu Chen v. Holder, 579 F.3d 73, 77 (1st Cir. 2009); Matovu v. Holder, 577 F.3d 383, 386 (1st Cir. 2009); López-Castro v. Holder, 577 F.3d 49, 52 (1st Cir. 2009). Given the incorporation of the IJ's findings and reasoning, the BIA's decision in this case easily survives the petitioner's challenge.

Relatedly, the petitioner contends that the BIA committed reversible error by failing to mention country conditions in its decision. The law, however, does not obligate the agency to "dissect in minute detail every contention that a complaining party

(reviewing BIA's construction of a statute); Chavarria v. Gonzales, 446 F.3d 508, 517 (3d Cir. 2006) (reviewing BIA's alleged mischaracterization of evidence).

advances." Raza v. Gonzales, 484 F.3d 125, 128 (1st Cir. 2007). Where, as here, the record shows that the agency, by means of either the BIA's statements or adoption of the IJ's decision, "thought about the evidence and the issues and reached a reasoned conclusion," the inquiry ends. Id.

At any rate, the country conditions reports do very little to substantiate the petitioner's claim of persecution. While they limn instances of violence and corruption in Guatemala, they do not, either directly or by reasonable implication, connect these foibles with the petitioner's particular situation. What we recently wrote in another case is pertinent here: "Without some specific, direct, and credible evidence relative to her own situation, there is an insufficient nexus between the petitioner and the general unrest depicted in the country conditions reports." Seng v. Holder, ___ F.3d ___, ___ (1st Cir. 2009) [2009 WL 3210506, at *5]; see also Amouri v. Holder, 572 F.3d 29, 35 (1st Cir. 2009); Raza, 484 F.3d at 129.

We next examine the petitioner's substantive plaints, starting with her asylum claim. To qualify for asylum, an alien bears the burden of establishing that she is a "refugee" within the purview of 8 U.S.C. § 1158(b)(1). See Makhoul, 387 F.3d at 79; Laurent v. Ashcroft, 359 F.3d 59, 63 (1st Cir. 2004). A refugee is a person unable or unwilling to return to her home country "because of persecution or a well-founded fear of persecution on account of

-7-

race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).

Persecution has both retrospective and prospective aspects. A showing of past persecution depends upon whether "the totality of a petitioner's experiences add up to more than mere discomfiture, unpleasantness, harassment, or unfair treatment." Nikijuluw v. Gonzales, 427 F.3d 115, 120 (1st Cir. 2005). If accomplished, such a showing creates a rebuttable presumption that a well-founded fear of future persecution endures. Id. Absent past persecution, an alien may demonstrate the existence of a well-founded fear of future persecution by appropriate evidence, unassisted by any presumption. See Makhoul, 387 F.3d at 79; see also 8 C.F.R. § 208.13(b).

In immigration law, "persecution" is a term of art. It necessarily "implies some connection to government action or inaction." Nikijuluw, 427 F.3d at 120-21 (quoting Harutyunyan v. Gonzales, 421 F.3d 64, 68 (1st Cir. 2005)). To make the requisite showing, an alien must pass both a subjective test (by showing that she genuinely fears persecution) and an objective test (by showing an objectively reasonable basis for that fear). See Laurent, 359 F.3d at 65. The latter test is satisfied "if a reasonable person in the petitioner's circumstances would fear persecution based on a statutorily protected ground." Nikijuluw, 427 F.3d at 122.

Applying these teachings, we first address the agency's determination that the petitioner did not suffer past persecution. In our view, this determination is supported by substantial evidence.

The linchpin of the petitioner's claim of past persecution is her repeated exposure, while walking to church, to dead bodies littering the streets. Admittedly, the sight of mutilated corpses, visible when traversing public thoroughfares, presents a horrific image. Horror, however, ordinarily is not a proxy for harm that achieves the level of persecution. See, e.g., Harutyunyan, 421 F.3d at 68; Rodríguez-Ramírez v. Ashcroft, 398 F.3d 120, 124 (1st Cir. 2005). In the usual case, more than an assault on the senses is needed to reach that plateau.[3] Being placed in a position where one must witness gruesome sights is unpleasant but — unless there is more to the story — will not compel a finding of persecution. See Harutyunyan, 421 F.3d at 68; Rodríguez-Ramírez, 398 F.3d at 124; Velasquez v. Ashcroft, 342 F.3d 55, 58 (1st Cir. 2003). Here, there is no "more."

---

[3] Indeed, even physical assaults, as opposed to assaults on the senses, have supportably been found not to constitute persecution. See, e.g., Bocova v. Gonzales, 412 F.3d 257, 262-64 (1st Cir. 2005) (upholding BIA's finding of no past persecution where petitioner had been arrested and beaten by police on two occasions); Guzman v. INS, 327 F.3d 11, 15-16 (1st Cir. 2003) (upholding BIA's determination that a single beating, though serious, did not amount to persecution).

We add that the petitioner's evidence of past persecution is deficient in at least two other respects. First, the record contains no evidence showing that the grisly images were in any way, shape, or form related to a statutorily protected ground; that is, to the petitioner's "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). In point of fact the record is devoid of even a sliver of proof that anyone targeted the petitioner at all — let alone that anyone targeted her on the basis of a protected ground.

Second, the term "persecution" implies some link to governmental action or inaction; that is, the government must practice, encourage, or countenance it, or at least prove itself unable or unwilling to combat it. See López de Hincapie v. Gonzales, 494 F.3d 213, 217 (1st Cir. 2007); Orelien v. Gonzales, 467 F.3d 67, 72 (1st Cir. 2006). In the case at hand, the petitioner has failed to show the slightest connection between the sightings of dead bodies and any governmental action or inaction. That gap in her proof, in itself, sinks her claim.

In sum, the agency's determination that the petitioner failed to show past persecution is susceptible to affirmance on several different grounds. Accordingly, the asylum question reduces to whether the petitioner, unaided by any presumption attributable to a showing of past persecution, unarguably proved a well-founded fear of future persecution. We think not.

The IJ did not question the genuineness of the petitioner's professed fear but, rather, found that fear objectively unreasonable. In reaching this conclusion, the IJ relied partially on family facts. For example, she noted that the petitioner's husband has remained in Guatemala and has been completely safe since moving in with his in-laws more than ten years ago. In addition, the petitioner's eldest son, Jairo, returned to Guatemala from the United States and the record contains no evidence that he has since encountered any problems. The safety of an alien's close family members who continue to reside in the alien's home country has been held, in appropriate circumstances, to undercut the reasonableness of a professed fear of future persecution. See, e.g., Nikijuluw, 427 F.3d at 122; Zheng v. Gonzales, 416 F.3d 97, 101 (1st Cir. 2005); Aguilar-Solis v. INS, 168 F.3d 565, 573 (1st Cir. 1999). We believe that the IJ appropriately drew such an inference here.

In addition, the petitioner's professed fear rests on an untenable premise. She fears being targeted by criminal elements as an emigré from the United States. But this fear is, at bottom, a fear of private conduct. As such, the agency correctly found this possibility to be a non-factor in analyzing the prospect of future persecution. See Scatambuli v. Holder, 558 F.3d 53, 59 (1st Cir. 2009) (discussing the proposition that being an "affluent Guatemalan[]" is not group membership covered by the statutory

-11-

taxonomy); López de Hincapie, 494 F.3d at 218 (explaining that membership in a well-to-do family, attractive to criminals, does not lay the groundwork for a claim of persecution).

To be sure, the petitioner's fear has another trigger: her stated concerns arising out of her husband's plight.[4] But again, her husband's disability and the existence of intra-family rancor are merely harbingers of unpleasantness, not reliable indicia of a likelihood of future persecution. See Scatambuli, 558 F.3d at 60-61.

The short of it is that, insofar as the petitioner's proof relates to the issue of future persecution, it does not compel a conclusion contrary to that reached by the agency. Thus, the agency's rejection of the petitioner's claim of a well-founded fear of future persecution is supported by substantial evidence.

The rest of the petitioner's asseverational array is easily overcome. Her next initiative relates to the rejection of her claim for withholding of removal. To prevail on a claim for withholding of removal, an alien must show that, if returned to her native land, she will more likely than not face persecution on account of a statutorily protected ground. Amouri, 572 F.3d at 35; Pulisir v Mukasey, 524 F.3d 302, 308 (1st Cir. 2008). The standard

---

[4] Although the petitioner testified, without corroboration, that two of her cousins had been killed by gang violence, she never connected that testimony to a statutorily protected ground. We, therefore, disregard the testimony.

is one of clear probability.  <u>INS</u> v. <u>Stevic</u>, 467 U.S. 407, 425, 430 (1984).

We need not linger long over this claim.  When, as in this case, an alien has failed to establish a well-founded fear of future persecution sufficient to mount an asylum claim, a counterpart claim for withholding of removal (that is, a claim premised on essentially the same facts) invariably fails.  <u>See</u> <u>Amouri</u>, 572 F.3d at 35; <u>Bocova</u> v. <u>Gonzales</u>, 412 F.3d 257, 264 (1st Cir. 2005); <u>Makhoul</u>, 387 F.3d at 82.  There is nothing more to be said.

One loose end remains: the petitioner's CAT claim. Because the petitioner has devoted her appellate brief exclusively to her other claims and has neglected the development of any argumentation supporting her claim for protection under the CAT, this claim is waived.  <u>See</u> <u>Makhoul</u>, 387 F.3d at 82.

We need go no further.  For the reasons elucidated above, we deny the petition for judicial review.

**<u>So Ordered</u>**.