# United States District Court
## For the First Circuit

No. 10-2357

MARLENE LISBETH ARÉVALO-GIRÓN,

Petitioner,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE

BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Torruella and Selya,
Circuit Judges.

Stephen M. Born and Mills & Born on brief for petitioner.
Tony West, Assistant Attorney General, Civil Division, United States Department of Justice, William C. Peachey, Assistant Director, Office of Immigration Litigation, and Ada E. Bosque, Senior Litigation Counsel, Office of Immigration Litigation, on brief for respondent.

January 31, 2012

**SELYA**, **Circuit Judge**.  The petitioner, Marlene Lisbeth Arévalo-Girón, is a Guatemalan national.  She seeks judicial review of a final order of the Board of Immigration Appeals (BIA) denying her application for withholding of removal.  After careful consideration, we deny the petition.

The petitioner entered the United States on November 1, 1997, without inspection.  Some ten years later, the Department of Homeland Security discovered her presence and initiated removal proceedings against her.  See 8 U.S.C. § 1182(a)(6)(A)(i); id. § 1229a(a)(2).

Before the immigration judge (IJ), the petitioner conceded removability but cross-applied for asylum, withholding of removal, and protection under the United States Convention Against Torture (CAT).  In support, she asserted that if returned to Guatemala, she would face persecution on account of her status as either a single woman with perceived wealth or a former "child of war."  The IJ determined that her claim for asylum was time-barred; denied withholding of removal on the ground that she had failed to demonstrate a likelihood of persecution in Guatemala on account of a statutorily protected status; and dismissed her entreaty for CAT relief because she had not shown any governmental involvement in the feared harm.

The BIA affirmed the IJ's decision.  This timely petition for judicial review followed.  In it, the petitioner challenges only the denial of withholding of removal.[1]

Because the BIA added its own gloss to the IJ's reasoning, we review the two decisions as a unit.  See Lopez Perez v. Holder, 587 F.3d 456, 460 (1st Cir. 2009).  In conducting that review, we test the agency's factual findings, including credibility determinations, under the familiar substantial evidence rule.  Morgan v. Holder, 634 F.3d 53, 56-57 (1st Cir. 2011).  This rule requires us to accept all factual findings that are "supported by reasonable, substantial, and probative evidence on the record considered as a whole."  Nikijuluw v. Gonzales, 427 F.3d 115, 120 (1st Cir. 2005) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)) (internal quotation marks omitted).  In other words, we must uphold such a finding unless the record compels a contrary conclusion.  See 8 U.S.C. § 1252(b)(4)(B); Sompotan v. Mukasey, 533 F.3d 63, 68 (1st Cir. 2008).  By contrast, we review legal conclusions de novo, ceding some deference, however, to the agency's interpretation of statutes and regulations that fall within its purview.  See Mendez-Barrera v. Holder, 602 F.3d 21, 24 (1st Cir. 2010).

---

[1] Because neither the petitioner's asylum claim nor her CAT claim is before us, we do not address them further.

To prove an entitlement to withholding of removal, an alien bears the burden of demonstrating a clear probability that her life or freedom would be threatened in her homeland on account of her race, religion, nationality, membership in a particular social group, or political opinion. See 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16(b); see also Morgan, 634 F.3d at 60. This burden can be carried in two ways: the alien can show either that she has suffered past persecution (giving rise to a rebuttable presumption of future persecution) or that, upon repatriation, a likelihood of future persecution independently exists. See López-Castro v. Holder, 577 F.3d 49, 52 (1st Cir. 2009); 8 C.F.R. § 208.16(b)(1)-(2). Regardless of which path the alien travels, she must establish a connection between the feared harm and one of the five statutorily protected grounds. See Lopez Perez, 587 F.3d at 462; López-Castro, 577 F.3d at 54.

In the case at hand, the petitioner claims that if she returns to Guatemala, she will be persecuted due to her membership in either of two social groups: single women perceived to have substantial economic resources[2] or former children of war. We doubt whether either group is legally cognizable. See Mendez-Barrera, 602 F.3d at 25 (limning requirements for cognizable social

---

[2] This is the description that the petitioner used before the IJ and the BIA. In this court, she for the most part uses the noun "women" without any adjective. But she cannot change the description of her purported social group midstream. See Silva v. Ashcroft, 394 F.3d 1, 5 n.6 (1st Cir. 2005).

group); see also Scatambuli v. Holder, 558 F.3d 53, 59 (1st Cir. 2009) (suggesting that "affluent Guatemalans" do not compose a cognizable group).  But we need not make so broad a holding to resolve the petitioner's claim.  Rather, we uphold the agency's finding that any potential hardship faced by the petitioner in Guatemala would be unrelated to her membership in either of these purported social groups.

Refined to bare essence, the petitioner makes two arguments.  First, she attempts to create a presumption of future persecution by describing incidents and facts that she characterizes as past persecution: the murder of her father by an unknown assailant; the drafting of her brothers into the civil patrol; and her lack of education.  The agency determined that these hardships were the result of Guatemala's horrific civil war, not the petitioner's membership in the putative social group comprising former children of the war.  This determination is supported by substantial evidence or, more precisely, by the absence of anything in the record linking the described incidents and facts to any particular status.  For aught that appears, the petitioner was simply in the wrong place at the wrong time.

We note, moreover, that the petitioner herself testified that her father was not a member of either the army, the guerillas, or the civil patrol.  This testimony supports the agency's determination that he was a random casualty of the civil war.  By

the same token, the petitioner's lack of education and her brothers' compelled participation in the civil patrol — to the extent that these facts might conceivably constitute persecution at all, cf. Aguilar-Solis v. INS, 168 F.3d 565, 572 (1st Cir. 1999) ("Danger resulting from participation in general civil strife, without more, does not constitute persecution.") — were never tied to the petitioner's purported status as a former "child of war." These deficits are fatal to her claim of past persecution. See Lopez Perez, 587 F.3d at 462-63 (rejecting claim for withholding of removal where record lacked evidence that past persecution resulted from protected status).

The petitioner's remaining claim is no more robust. She asserts that, if removed, she will be targeted by violent gangs in Guatemala because she is a single woman perceived to have substantial economic resources. To bolster this claim, she testified that her family members were the victims of gang-related robberies, and she provided documentation regarding the prevalence of violence against women in Guatemala. The agency concluded, however, that the violence in Guatemala is indiscriminate and that the gangs do not target any particular social group. This conclusion is fully supported by the record.

We need not tarry. There is no evidence in the record that the gangs specifically target women. The petitioner herself

never testified to that effect; to the contrary, she stated that the gangs were only interested in increasing their wealth.

Nor does the State Department country conditions report cited by the petitioner materially alter the decisional calculus. This report describes how violence against women is, regrettably, an ongoing problem in Guatemala. Nevertheless, the report does not focus on economic considerations but, rather, suggests that the violence in Guatemala, though widespread, is not aimed at any particular segment of society. See Palma-Mazariegos v. Gonzales, 428 F.3d 30, 37 (1st Cir. 2005) (rejecting withholding of removal claim where State Department report "attests that the threat of violence afflicts all Guatemalans to a roughly equal extent, regardless of their membership in a particular group or class"). At any rate, the situation described in the report is not so pervasive as to compel the conclusion that the petitioner is likely to suffer harm upon her return to her homeland.

Let us be perfectly clear. There is simply no evidence that women with substantial economic resources, whether single or married, are more attractive targets for Guatemalan gangs than men with fat wallets. Fairly viewed, greed — not social group membership — is the apparent trigger for the gangs' interest, see Lopez de Hincapie v. Gonzales, 494 F.3d 213, 219 (1st Cir. 2007) (rejecting claim for withholding of removal where evidence suggested that petitioner was targeted "because of greed, not

-7-

because of her political opinion or membership in a particular social group"), and mere vulnerability to criminal predations cannot define a cognizable social group, <u>see</u>, <u>e.g.</u>, <u>Sicaju-Diaz</u> v. <u>Holder</u>, 663 F.3d 1, 4 (1st Cir. 2011).

To cinch matters, persecution requires some nexus to the government. <u>See</u> <u>López-Castro</u>, 577 F.3d at 55 (rejecting claim for withholding of removal where petitioner failed to link feared gang violence with Guatemalan government). Here, however, the petitioner has not shown any connection between the violence that she fears and the government of Guatemala.

We need go no further. For the reasons elucidated above, we deny the petition for judicial review.

**So Ordered**.