Not for Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

No. 12-1336

IMAD ALI DARWICH; RANA SAAD DARWICH,

Petitioners,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Lynch, <u>Chief Judge</u>,
Souter,<sup>*</sup> <u>Associate Justice</u>,
and Lipez, <u>Circuit Judge</u>.

Saher J. Macarius, Avni J. Amin, and Audrey Botros on brief
for petitioners.
Kathryn M. Mckinney, Attorney, Office of Immigration
Litigation, Civil Division, U.S. Department of Justice, Stuart F.
Delery, Acting Assistant Attorney General, and Stephen J. Flynn,
Assistant Director, on brief for respondent.

June 24, 2013

---

<sup>*</sup> Hon. David H. Souter, Associate Justice (Ret.) of the
Supreme Court of the United States, sitting by designation.

**SOUTER, <u>Associate Justice</u>**. Petitioners, Imad Ali Darwich and Rana Saad Darwich, seek review of a Board of Immigration Appeals (BIA) decision, dismissing their appeal of an Immigration Judge's decision finding them removable. We deny the petition.

I

Petitioners are Lebanese citizens, raised Muslim, who lived in Lebanon until 2001, when they resettled in the Ivory Coast. They converted to Christianity in 2005 during a visit to the United States, and upon their return to the Ivory Coast they received a number of threats, which they plausibly attributed to the Muslim population's reaction to their religious conversion. They traveled to the United States again and were admitted on six-month visas in 2006, though they remained beyond the expiration date. Despite a timely request for asylum, the United States began proceedings for removing them to Lebanon, which they resisted because they associate its large Muslim population with the threats they received in the Ivory Coast.

The Immigration Judge (IJ) found them removable by "clear, convincing, and unequivocal evidence." AR 95-96. Specifically, the IJ determined that even the Ivory Coast threats did not rise to the level of past persecution on account of religion or any other ground that might have supported petitioner's claims, and found that in any event they "do not have a well-founded fear of returning to the country of Lebanon on account

of their religion or any of the other enumerated grounds." AR 98. The IJ, therefore, rejected petitioners' claims for asylum and withholding of removal, and likewise found that they qualified for no protection from removal under the Convention Against Torture (CAT).

On appeal, the BIA dismissed their request for relief, finding that petitioners had proven neither past persecution in Lebanon, nor a well-founded fear of future persecution there, stemming from a likelihood that Lebanon's majority Muslim population would carry out the threats made in the Ivory Coast. The BIA also rejected petitioners' claim that CAT prohibited their transfer to Lebanon owing to a likelihood that they would be tortured there.

Petitioners filed a petition for review in this court, which has jurisdiction under 8 U.S.C. § 1252. See Jianli Chen v. Holder, 703 F.3d 17, 21 (1st Cir. 2012).

II

"Because the BIA adopted the IJ's opinion as well as commenting separately, we review the two decisions as a unit." Lopez Perez v. Holder, 587 F.3d 456, 460 (1st Cir. 2009). "[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B), and our review, accordingly, is highly deferential, see Arevalo-Giron v. Holder, 667 F.3d 79,

-3-

81-82 (1st Cir. 2012). See also Lopez de Hincapie v. Gonzales, 494 F.3d 213, 218 (1st Cir. 2007) (observing that this standard "is not petitioner-friendly"). Legal determinations receive *de novo* review. See Aponte v. Holder, 683 F.3d 6, 10 (1st Cir. 2012).

A

Petitioners argue that the BIA erroneously found that they failed to qualify for asylum, which may be granted "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The term "persecution," as it is used in § 1101, "connotes a level of harm that 'add[s] up to more than mere discomfiture, unpleasantness, harassment, or unfair treatment,'" Gilca v. Holder, 680 F.3d 109, 114 (1st Cir. 2012) (quoting Nikijuluw v. Gonzales, 427 F.3d 115, 120 (1st Cir. 2005)), and "always implies some connection to government action or inaction." Harutyunyan v. Gonzales, 421 F.3d 64, 68 (1st Cir. 2005). "[A]n alien must pass both a subjective test (by showing that she genuinely fears persecution) and an objective test (by showing an objectively reasonable basis for that fear)." Lopez Perez, 587 F.3d at 461-62.

Because the Government intends to remove petitioners to Lebanon, they must show that they were persecuted in Lebanon or have a well-founded fear of future persecution there. See 8 U.S.C. § 1101(a)(42)(A). In his testimony, Darwich disclaimed that they

had ever been persecuted in that country, and their request, therefore, is predicated exclusively on a fear of persecution upon their return, on account of their conversion to Christianity.[1] As to that, they testified about their apprehension and offered documentary evidence that they said demonstrates persecution against Muslim converts to Christianity in Lebanon, but the BIA found that petitioners had failed to prove the well-founded fear that the law requires.

Substantial evidence supported this determination. See Lopez de Hincapie, 494 F.3d at 218. Whether or not petitioners genuinely believe that they will be persecuted by practicing Muslims, at the very least they failed to prove an "objectively reasonable basis" for fearing persecution that would implicate the government of Lebanon, which it was their burden to show. Lopez Perez, 587 F.3d at 461-62; see Harutyunyan, 421 F.3d at 68. The documents they submitted almost exclusively concern other

---

[1]Throughout their brief, petitioners argue that they have presumptively shown a credible fear of future persecution in light of their past persecution. To be sure, they would be entitled to such a presumption upon a finding of relevant past persecution. See 8 C.F.R. § 1208.13(b)(1). But as the IJ and BIA found, their allegations of past persecution exclusively concern conduct in the Ivory Coast, which gives rise to no such presumption about future conduct in Lebanon. Although petitioners argue that their experience in the Ivory Coast provides an objective basis to fear future persecution in Lebanon, they have failed to allege any concrete connection between their past persecution in the Ivory Coast and potential persecution in Lebanon. On the deferential review appropriate here, we have no sufficient basis to reject the administrative findings.

countries, and the one piece of written evidence specific to Lebanon fails to meet their burden. This document purports to be a response to an enquiry addressed to the "Office of the *Mufti* in Lebanon," advising that an unrepentant apostate from Islam "should be put to death" by "the *imam* (ruler or leader in Islam)."[2] AR 214-215. Although the version in English bears a date in 2008, the date of this advice is unknown, and it refers to a request made "[s]everal years ago." Nothing is disclosed about its translator from (supposedly) the original Arabic, and nothing attests to its authenticity. Just as significantly, not even the text itself suggests that the Lebanese government would overlook such an infliction of death by a religious authority, which must be shown before even an otherwise reasonable fear of persecution can qualify as a ground for asylum.

Indeed, to the extent the record addresses a possible government role, the evidence supports doubt that religious execution would be tolerated. As the BIA explained, the Lebanese Constitution guarantees equal Muslim and Christian representation in the government. According to a 2009 State Department report, 12

---

[2]Petitioners submitted a number of other documents to the IJ and BIA, but as they note in their brief, these sources concerned "similarly situated" countries, not Lebanon, Pet'rs' Br. 11, and so fail to provide an objective basis on which to find a well-founded fear of future persecution in Lebanon. To the extent petitioners have offered new evidence that was not presented to the IJ and BIA, we do not consider it, as we only assess the record on which the tribunals below based their decisions. See 8 U.S.C. § 1252(b)(4)(A).

-6-

of the 18 official religions in Lebanon are Christian denominations, and Lebanon is a refuge for those (including Christians) fleeing religious persecution in neighboring countries. Since granting the petition for review would require the evidence to "point[] unerringly in the opposite direction [from the BIA's decision]," Laurent v. Ashcroft, 359 F.3d 59, 64 (1st Cir. 2004), this record falls far short of calling the administrative denial of asylum into question.[3]

Petitioners also say that the BIA erred by rejecting their claim for withholding of removal, but their position is even weaker here. Withholding of removal will be granted only on showing a "clear probability" that petitioners' life or freedom will be threatened upon return. See 8 U.S.C. § 1231(b)(3)(A); Teng v. Mukasey, 516 F.3d 12, 15 (1st Cir. 2008). Because withholding thus implicates a higher burden of proof, rejection of petitioners' asylum claim necessarily dooms withholding of removal. See Lobo v. Holder, 684 F.3d 11, 19-20 (1st Cir. 2012) (noting that "if a petitioner cannot meet the lesser burden for establishing eligibility for asylum, then, sure as night follows day, so too will it hold true that he will be unable to satisfy the higher standard for withholding of removal.").

---

[3]Petitioners also take issue with the BIA's failure to assess whether the persecution they are said to have suffered in the Ivory Coast was on the basis of their religion, in rejecting their asylum claim. But the BIA rejected asylum on other grounds, obviating any need to make the specific finding that petitioners now request.

B

Finally, petitioners contend that CAT required the BIA to forestall their return to Lebanon. For that to be so, petitioners would have had to prove that "it is more likely than not that [they] would be tortured if removed" to Lebanon. 8 C.F.R. § 1208.16(c)(2). The BIA found that no such showing had been made, and in this court petitioners cite nothing in the record to disturb that finding. Rather, they urge us to remand for the BIA to discuss explicitly whether relief is warranted under the torture statute. But the IJ was explicit in rejecting any such possibility, stating that petitioners have not "made any claim that they would be subjected to torture by the government of Lebanon, nor any other party, if returned to the country of Lebanon," AR 98-99, and the BIA came to the same conclusion. No remand, therefore, is warranted.

III

We accordingly deny the petition for review.

*It is so ordered.*