# United States Court of Appeals
## For the First Circuit

No. 14-1881

EDGAR ROMERO VILLAFRANCA,

Petitioner,

v.

LORETTA E. LYNCH,* ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER

OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Selya and Thompson,
Circuit Judges.

Kevin MacMurray and MacMurray & Associates on brief for petitioner.

Joyce R. Branda, Acting Assistant Attorney General, Civil Division, Jennifer Williams, Senior Litigation Counsel, Office of Immigration Litigation, and Yedidya Cohen, Trial Attorney, Office of Immigration Litigation, on brief for respondent.

August 5, 2015

---

* Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Loretta E. Lynch has been substituted for former Attorney General Eric H. Holder, Jr. as the respondent.

**SELYA**, **Circuit Judge**.    The petitioner, Edgar Romero Villafranca, is a Honduran national who seeks judicial review of a final order of the Board of Immigration Appeals (BIA) denying his application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture (CAT).   After careful consideration, we deny his petition.

The background is easily sketched.   In November of 2010, the petitioner entered the United States illegally, was thereafter detained, and was then paroled.   He told an asylum officer that he was seeking asylum due to what he described as his attempted kidnapping or murder a year earlier.   He said that, while driving his car along a Honduran road, a vehicle containing several armed men cut him off.   The men were dressed in regalia of a sort that the petitioner thought "customary" for the special police.   Three of them approached the petitioner's vehicle and, as he sped away, they opened fire.   The petitioner was able to evade his assailants, but he nevertheless thought that he remained at risk because of his family's wealth and political ties.

In due course, the petitioner was served with a notice to appear before an immigration judge (IJ) and (for reasons not relevant here) his case was subsequently transferred to Massachusetts.   The petitioner conceded removability and cross-applied for asylum, withholding of removal, and CAT protection.

During a hearing before the IJ in February of 2013, the petitioner recounted the narrative that he had related to the asylum officer. He added that he did not report the incident because he feared that the Honduran police were involved; that he drove to his family's farm in Juticalpa following the incident; and that he remained there for roughly six months before fleeing to the United States.

The petitioner pointed to his family's upper-class status and political ties as likely reasons why he was targeted by the marauders. He mentioned that his father was a long-time member of the ruling party in Honduras and a friend of the country's then-president. Furthermore, his aunt and uncle were both entrenched in Honduran politics. Although his family had continued to live safely in Honduras before and after the attack that he described, he said that his father had received several threatening telephone calls. He went on to note that his godfather had been assassinated in 2007, albeit for unspecified reasons.

The IJ found the petitioner's testimony to be credible. She nonetheless concluded that he had not established either past persecution or a well-founded fear of future persecution. Moreover, he had failed to tie his attack to his membership in a particular social group. Based on these and other findings, the

IJ denied all of the petitioner's claims for relief and ordered him removed to Honduras.

The petitioner appealed to the BIA, which affirmed the IJ's decision. The BIA concluded that even if the petitioner had successfully demonstrated the requisite connection between the attack and his membership in a particular social group, he had failed to establish either past persecution or a well-founded fear of future persecution. This timely petition for judicial review followed. See 8 U.S.C. § 1252(b)(1).

Where, as here, the BIA adopts and affirms an IJ's decision "while adding its own gloss, we review both the IJ's and the BIA's decisions as a unit." Jianli Chen v. Holder, 703 F.3d 17, 21 (1st Cir. 2012). Our review proceeds under the deferential substantial evidence rubric, which "requires us to accept the agency's findings of fact, including credibility findings, as long as they are supported by reasonable, substantial, and probative evidence on the record considered as a whole." Segran v. Mukasey, 511 F.3d 1, 5 (1st Cir. 2007) (internal quotation marks omitted). "Absent an error of law, we will reverse only if the record compels a conclusion contrary to that reached by the agency." Mariko v. Holder, 632 F.3d 1, 5 (1st Cir. 2011). Questions of law "engender de novo review, but with some deference to the agency's reasonable

- 4 -

interpretation of statutes and regulations that fall within its sphere of authority." Jianli Chen, 703 F.3d at 21.

Before assessing the decision below, it is helpful to lay a foundation. To be eligible for asylum, an alien must establish that he is a refugee within the meaning of 8 U.S.C. § 1101(a)(42). In pertinent part, that statute demands a showing of "persecution or a well-founded fear of persecution" on account of one of five enumerated grounds: "race, religion, nationality, membership in a particular social group, or political opinion[.]" We have made pellucid that "persecution requires more than a showing of either episodic violence or sporadic abuse." Palma-Mazariegos v. Gonzales, 428 F.3d 30, 37 (1st Cir. 2005). Put another way, "[t]o qualify as persecution, a person's experience must rise above unpleasantness, harassment, and even basic suffering." Jorgji v. Mukasey, 514 F.3d 53, 57 (1st Cir. 2008) (internal quotation marks omitted). In addition, "the term 'persecution' implies some link to governmental action or inaction; that is, the government must practice, encourage, or countenance it, or at least prove itself unable or unwilling to combat it." Lopez Perez v. Holder, 587 F.3d 456, 462 (1st Cir. 2009).

A successful showing of past persecution creates a rebuttable presumption that an alien's fear of future persecution

is well-founded.  See Orelien v. Gonzales, 467 F.3d 67, 71 (1st Cir. 2006).  An inability to establish past persecution, however, is not necessarily fatal to the asylum seeker's quest: he still "may prevail on an asylum claim by proving, simpliciter, a well-founded fear of future persecution independent of any presumption."  Id.

With this foundation in place, we turn to the petitioner's claims of error.  To begin, the petitioner asserts that neither the IJ nor the BIA appropriately analyzed whether he had experienced past persecution.  This assertion is belied by the record.

For her part, the IJ conducted a thorough analysis regarding the existence vel non of past persecution.  After a detailed discussion, the IJ found that the petitioner had fallen victim to a single, isolated criminal attack which failed to come close to the level of persecution.  The BIA was equally thorough; it affirmed the IJ's determination that no persecution had been established, citing a trio of cases in which this court upheld decisions of the BIA concluding that isolated incidents did not equate to persecution.[1] The BIA then concluded that the solitary attack on the petitioner did not sink to the level of persecution.

---

[1] See Topalli v. Gonzales, 417 F.3d 128, 132 (1st Cir. 2005); Bocova v. Gonzales, 412 F.3d 257, 263 (1st Cir. 2005); Nelson v. INS, 232 F.3d 258, 263-64 (1st Cir. 2000).

The petitioner next complains about the agency's finding that he failed to demonstrate a well-founded fear of future persecution. This plaint fares no better.

A well-founded fear of future persecution must be both subjectively authentic and objectively reasonable. See Orelien, 467 F.3d at 71. To achieve this benchmark, an alien must show that he genuinely fears persecution were he to be repatriated and that his fear has an objectively reasonable basis. See Lopez Perez, 587 F.3d at 461-62. A petitioner's credible testimony may alone satisfy the subjective component of the test. See Makhoul v. Ashcroft, 387 F.3d 75, 80-81 (1st Cir. 2004). Here, the IJ credited the petitioner's testimony about his subjective fear of returning to Honduras, so we turn to the objective component.

The objective component of the test is satisfied only if "a reasonable person in the asylum applicant's circumstances would fear persecution on account of a statutorily protected ground." Id. at 81. Both the IJ and the BIA found that the petitioner had not made this showing. The question, then, reduces to whether the record compels a contrary conclusion. See INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992).

We need not tarry. Simply put, the record does not compel a contrary conclusion but, rather, is fully consistent with

the agency's determination that the petitioner's professed fear of future persecution was not objectively reasonable.

At the center of the petitioner's claimed fear of future persecution is the attack that he recounted. But the agency's finding that the attack did not evince persecution was supportable. The record indicates, at most, a solitary, quite possibly random, incident — the cause of which is unknown. The petitioner, though understandably frightened, escaped unscathed. We have regularly upheld determinations by the BIA that this sort of sporadic, isolated event does not — in the absence of evidence of systematic targeting or the like — constitute persecution. See, e.g., Khan v. Mukasey, 549 F.3d 573, 576-77 (1st Cir. 2008); Journal v. Keisler, 507 F.3d 9, 12 (1st Cir. 2007); Rodriguez-Ramirez v. Ashcroft, 398 F.3d 120, 124 (1st Cir. 2005). Indeed, we have upheld the BIA's plausible application of similar reasoning even where more than one episode is alleged to have occurred. See, e.g., Touch v. Holder, 568 F.3d 32, 39-40 (1st Cir. 2009); Topalli v. Gonzales, 417 F.3d 128, 132 (1st Cir. 2005); Bocova v. Gonzales, 412 F.3d 257, 263-64 (1st Cir. 2005).

The petitioner's hand is not strengthened by his allusions to threatening telephone calls to his father and the assassination of his godfather. He has offered only vague and general descriptions of these events, without any concrete

indication of what brought them about.  To nail down the point, he has in no way linked these incidents to the attack about which he complains.  Seen in this light, the purported relevance of these events is purely speculative.

The agency's conclusion that the petitioner's fear of persecution is not objectively reasonable gains additional support from other aspects of the record.  For one thing, the petitioner remained unharmed in Honduras for roughly six months after the attack.  See Touch, 568 F.3d at 40 (concluding that remaining unharmed in homeland for substantial period of time can support finding that fear of persecution is not objectively reasonable).  For another thing, despite the petitioner's assertion that the persecution he suffered was based on kinship, his family members have continued to dwell in Honduras unharmed.  See Lopez Perez, 587 F.3d at 463 ("The safety of an alien's close family members who continue to reside in the alien's home country has been held, in appropriate circumstances, to undercut the reasonableness of a professed fear of future persecution.").

To be sure, the general materials submitted by the petitioner to the agency (such as news articles and country conditions reports) paint a disturbing picture of endemic violence and corruption in Honduras.  But on this sparse record, such

generalized evidence is not sufficient to compel a finding of a well-founded fear of persecution.  See Makhoul, 387 F.3d at 82.

The short of it is that the BIA was on supportable ground in viewing the petitioner's attack as a solitary event that was unpleasant and harassing but, nevertheless, did not amount to persecution.  See Tobon-Marin v. Mukasey, 512 F.3d 28, 32 (1st Cir. 2008).  Here, as in Orelien, 467 F.3d at 71, the attack in question "is too frail a lance to unhorse the BIA's fact-based finding that nothing amounting to persecution occurred."

That ends this aspect of the matter.[2]  In the last analysis, the fate of the petitioner's asylum claim depends on the drawing of inferences; and when, as now, "the record supports plausible but conflicting inferences in an immigration case, the IJ's choice between those inferences is, a fortiori, supported by substantial evidence."  Lopez de Hincapie v. Gonzales, 494 F.3d 213, 219 (1st Cir. 2007).

The petitioner's remaining claims are readily dispatched.  His claim for withholding of removal "carries with it a more stringent burden of proof than does a counterpart effort to obtain asylum."  Orelien, 467 F.3d at 73.  In order to succeed on

---

[2] Given the supportable finding that the petitioner failed to prove a well-founded fear of persecution, we need not reach his claim that the IJ erred in "arbitrarily limit[ing]" the definition of the enumerated ground under which the petitioner sought relief.

- 10 -

such a claim, "an alien must show that, if returned to [his] native land, [he] will more likely than not face persecution on account of a statutorily protected ground." Lopez Perez, 587 F.3d at 463. Where, as here, an alien falls short of showing persecution sufficient to satisfy the more easily attainable standard required for an asylum claim, a counterpart claim for withholding of removal necessarily fails. See id.

This leaves only the petitioner's claim for protection under the CAT. That claim has not been preserved: the petitioner's brief in this court is devoid of any developed argumentation directed to it. Thus, any such claim has been waived. See Segran, 511 F.3d at 7 n.2; Makhoul, 387 F.3d at 82.

We need go no further. For the reasons elucidated above, we deny the petition for judicial review.


**So ordered.**