# United States Court of Appeals
## For the First Circuit

No. 13-1570

LUZ MERY MORENO,

Petitioner,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE

BOARD OF IMMIGRATION APPEALS

Before

Torruella, Selya and Howard,

Circuit Judges.

Stephen M. Born and Mills and Born, LLP on brief for petitioner.

Stuart F. Delery, Assistant Attorney General, Greg D. Mack, Senior Litigation Counsel, and Manuel A. Palau, Trial Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, on brief for respondent.

April 18, 2014

**SELYA, Circuit Judge.** Petitioner Luz Mery Moreno, a Colombian national, seeks judicial review of a final order of the Board of Immigration Appeals (BIA) denying her asylum and ordering her removed to her homeland. After careful consideration, we deny the petition.

In December of 1998, the petitioner entered the United States pursuant to a non-immigrant tourist visa. That visa required that she depart the country by June 21, 1999. The petitioner overstayed, and nearly eight years passed before federal authorities initiated removal proceedings against her. See 8 U.S.C. § 1227(a)(1)(B).

The petitioner admitted the factual allegations of the charge and conceded removability. She did, however, cross-apply for asylum, withholding of removal, and protection pursuant to the United Nations Convention Against Torture (CAT). The gist of her asylum claim was her plaint that she had been persecuted, and would face future persecution, on account of, among other things, her status as the expatriate widow of a slain narco-trafficker.

On July 13, 2011, the petitioner appeared for the removal hearing. Although the petitioner did not affirmatively seek asylum until 2007 — well after the usual one-year deadline (measured from date of entry into the country) for filing asylum claims, see 8 U.S.C. § 1158(a)(2)(B) — the immigration judge (IJ) nonetheless deemed her application timely. The IJ predicated this conclusion,

without further explanation, on the fact that the petitioner's second husband had applied for asylum in 1992 and the United States Citizenship and Immigration Service had considered the petitioner to be a part of that application.

Turning to the merits, the IJ found the petitioner's testimony credible (though somewhat lacking in specifics). Consistent with this positive credibility determination, we assume the accuracy of the raw facts elaborated in her testimony. See Gilca v. Holder, 680 F.3d 109, 113 (1st Cir. 2012).

The petitioner related a tale of a Colombia wracked by fear and violence. The saga began in high school, when she started dating her first husband, Juan Carlos Giraldo (whom she married in 1995).

Approximately two years into the marriage, the petitioner discovered a firearm and drugs in her husband's coat. She also learned that Giraldo had access to large amounts of unexplained money. With these data in hand, the petitioner settled on a dark conclusion: her husband was a drug trafficker.

To complicate matters, Giraldo was prone to angry outbursts. His violent tendencies escalated over time, and in October of 1998, the petitioner left the marital home and moved to her parents' nearby residence. Though she stayed there for several weeks, her absence failed to abate Giraldo's stream of threats. To

escape what she perceived as imminent peril, she applied for, obtained, and used a tourist visa to enter the United States.

Distance did not prove to be a complete panacea. The petitioner remained in contact with relatives and, through them, learned that her first husband was continuing to threaten her and her family.

Those threats came to an abrupt halt on March 17, 2001, when Giraldo met a violent death. His murder was presaged by anonymous threats directed at the petitioner and her relatives, as well as gunshots fired at Giraldo's home in or about September 2000. Although the petitioner never learned the identity of her first husband's slayer, she came to believe that an unpaid drug-related debt had sparked the homicide. She also believed that the litany of threats and gunshots were attributable to Giraldo's drug-trade associates.

After hearing the petitioner's testimony, the IJ denied her application for asylum.[1] The gravamen of the IJ's decision was a finding that the petitioner had failed to carry her burden of proving either past persecution or a well-founded fear of future

---

[1] The IJ likewise denied the petitioner's claims for withholding of removal and CAT protection. In her appellate briefing, the petitioner mentions these claims in passing but presents no developed argumentation in connection therewith. We therefore deem these claims abandoned and do not discuss them further. See Morgan v. Holder, 634 F.3d 53, 60 (1st Cir. 2011); Ahmed v. Holder, 611 F.3d 90, 98 (1st Cir. 2010); see also United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

-4-

persecution based on a statutorily protected ground.  See 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 1208.13(b).

The petitioner pursued an administrative appeal.  The BIA rejected that entreaty.  This timely petition for judicial review followed.

Judicial review of immigration cases normally focuses on the final order of the BIA.  See Mariko v. Holder, 632 F.3d 1, 5 (1st Cir. 2011).  "But where, as here, the BIA accepts the IJ's findings and reasoning yet adds its own gloss, we review the two decisions as a unit."  Xian Tong Dong v. Holder, 696 F.3d 121, 123 (1st Cir. 2012).  "In this exercise, we test the agency's factual findings . . . under the familiar substantial evidence rule."  Gilca, 680 F.3d at 114 (internal quotation marks omitted).  "This standard requires us to accept all findings of fact so long as they are supported by reasonable, substantial, and probative evidence on the record considered as a whole."  Id. (internal quotation marks omitted).  An agency's determination of a fact-driven issue may not be set aside unless the evidence compels a contrary determination.  See INS v. Elias-Zacarias, 502 U.S. 478, 483-84 (1992).

The petitioner advances three claims of error.  We address each claim in turn.

To begin, the petitioner asserts that the BIA erred in applying the REAL ID Act's corroboration requirements to her asylum application.  See 8 U.S.C. § 1158(b)(1)(B)(ii).  We review this

-5-

claim of legal error de novo, with some deference, however, to the agency's expertise in matters of statutory and regulatory interpretation. See Jianli Chen v. Holder, 703 F.3d 17, 21 (1st Cir. 2012).

By its terms, the REAL ID Act applies to "applications for asylum . . . made on or after [May 11, 2005]." REAL ID Act of 2005, Pub. L. No. 109-13, § 101(h)(2), 119 Stat. 231, 305. The petitioner applied for asylum on June 5, 2007, so the REAL ID Act would appear to control. See, e.g., Mazariegos-Paiz v. Holder, 734 F.3d 57, 64 (1st Cir. 2013) (applying the REAL ID Act to asylum application filed in 2008).

But appearances can be deceiving, cf. Aesop, The Wolf in Sheep's Clothing (circa 550 B.C.), and the petitioner suggests that the linkage of her 2007 asylum application with her second husband's 1992 asylum application — a linkage that the IJ developed for timeliness purposes — alters the analysis. This suggestion, though ingenious, cannot withstand scrutiny.

The agency's determination of the timeliness of an asylum application is beyond the scope of judicial review. See 8 U.S.C. § 1158(a)(3); see also Pan v. Gonzales, 489 F.3d 80, 84 (1st Cir. 2007). Moreover, there is no principled basis for concluding that the timeliness determination in this case — which in all events is

-6-

something of a mystery[2] — controls the separate issue of what statutory regime governs the petitioner's asylum application. The former simply does not inform the latter. We conclude, therefore, that the BIA's invocation of the REAL ID Act's corroboration requirement was altogether appropriate.

The petitioner's second claim of error implicates the agency's holding that she failed to carry her burden of proving either past persecution or a well-founded fear of future persecution. See Makhoul v. Ashcroft, 387 F.3d 75, 79 (1st Cir. 2004) (explicating allocation of burden of proof in asylum cases). To make out eligibility for asylum, "the alien must establish that [s]he is a 'refugee' within the meaning of the Immigration and Nationality Act, 8 U.S.C. § 1158(b)(1)." Orelien v. Gonzales, 467 F.3d 67, 70 (1st Cir. 2006). This requires the alien to show that she is "unable or unwilling to return to her home country 'because of [past] persecution or a well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" Lopez Perez

_____

[2] We understand that an alien's asylum claim may in certain circumstances be treated as derivative of her husband's asylum claim. See Ang v. Gonzales, 430 F.3d 50, 52-53 (1st Cir. 2005). However, we are puzzled because even though the IJ deemed the petitioner's 2007 claim for asylum to have been included in her second husband's 1992 asylum application, the petitioner was still in Colombia and married to her first husband in 1992; she did not emigrate to the United States until 1998 and did not wed her second husband until 2001.

v. Holder, 587 F.3d 456, 461 (1st Cir. 2009) (quoting 8 U.S.C. §
1101(a)(42)(A)).

We review the agency's findings concerning the presence
or absence of persecution "through the prism of the substantial
evidence rule." Lopez de Hincapie v. Gonzales, 494 F.3d 213, 218
(1st Cir. 2007). With respect to her claim of past persecution,
the petitioner points to her first husband's involvement with
narco-traffickers and his ensuing death. Relatedly, she points to
the threats that both she and her family received over the years —
threats that she believes emanated from narco-traffickers. These
events, the petitioner asserts, compel a conclusion that she has
suffered past persecution.

The petitioner's argument ignores the agency's legitimate
concern that her testimony, though credible, was uncorroborated by
other evidence. Both the IJ and the BIA were troubled by this
paucity of evidence, noting that the petitioner never substantiated
either her suspicion that her first husband was involved with
narco-traffickers or her suspicion that he was killed as a result
of that involvement. The agency had the right to require that the
petitioner proffer more than uncorroborated suppositions; it had
the right to expect such corroboration, if reasonably available.
See 8 U.S.C. § 1158(b)(1)(B)(ii) (stating that the trier of fact is
entitled to require an asylum applicant to corroborate otherwise
credible testimony). In this instance, the petitioner offered

neither corroboration nor a plausible explanation for the lack of corroboration. Consequently, the agency was entitled to find — as it did — that she failed to carry her burden of proof. See, e.g., Muñoz-Monsalve v. Mukasey, 551 F.3d 1, 8 (1st Cir. 2008).

The agency's conclusion about the insufficiency of the evidence of past persecution withstands the petitioner's assault for another reason as well. The BIA found that, as presented, the petitioner's problems did not rise to the level of persecution. We cannot say that this finding is at odds with the record.

Not every untoward incident or series of untoward incidents necessarily equates with persecution. See Nikijuluw v. Gonzales, 427 F.3d 115, 120 (1st Cir. 2005) (explaining "that the totality of a petitioner's experiences [must] add up to more than mere discomfiture, unpleasantness, harassment, or unfair treatment"). While the petitioner's testimony indicates that she received threats, there is no evidence either that these threats materialized or that the petitioner herself was placed in harm's way. We have said before, and today reaffirm, that "hollow threats, . . . without more, certainly do not compel a finding of past persecution." Ang v. Gonzales, 430 F.3d 50, 56 (1st Cir. 2005).

To cinch matters, the petitioner — apart from conjecture — never tied her first husband's murder to her own persecution. An alien who claims that harm to a relative is evidence that she

herself has been persecuted must present more than gossamer strands of speculation and surmise. See Ruiz v. Mukasey, 526 F.3d 31, 37 (1st Cir. 2008) (holding that, where the record suggests that the negative experiences of a petitioner and her family exist in isolation from each other, a finding of persecution is not warranted). That is particularly true where, as here, the connection between the events is counter-intuitive. After all, the petitioner was neither involved in her first husband's nefarious activities nor living with him when the murder occurred.[3]

This leaves a subset of the petitioner's second claim of error. "An alien who has not been able to establish past persecution sometimes can make an independent showing that [s]he has a well-founded fear of future persecution." Gilca, 680 F.3d at 116. The petitioner argues that she has made such a showing.

Refined to bare essence, the petitioner's argument regarding future persecution depends on the rebuttable presumption that arises from a finding of past persecution. See Lopez Perez, 587 F.3d at 461. Because we already have upheld the agency's holding that the petitioner did not succeed in proving past persecution, this argument collapses of its own weight. The end result is that the BIA's conclusion that the petitioner's testimony, without more, fell short of carrying her burden of

_____

[3] Indeed, the petitioner fled Colombia more than two years before her first husband was slaughtered.

-10-

establishing persecution satisfies the substantial evidence standard.

The petitioner's final claim of error need not detain us. In attempting to satisfy the "on account of" element of the refugee definition, see 8 U.S.C. § 1101(a)(42)(A), the petitioner asserts membership in a social group of widows of slain narco-traffickers.[4]

Before us, she posits that the agency blundered in finding that the particular social group to which she tied her claim of persecution was not cognizable. Given our holding that the petitioner has not established either past persecution or a well-founded fear of future persecution, the "social group" question no longer matters. Consequently, this claim of error is moot.

We need go no further. For the reasons elucidated above, we sustain the final order of removal and deny the petition for review.

**So Ordered.**

---

[4] The petitioner has waived any argument concerning a second proposed social group: Colombians perceived as wealthy due to their residency in the United States. See Ahmed, 611 F.3d at 97 (explaining that a failure to present a claim to the BIA precludes judicial review of that claim).