**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 14-2034

GIKLIF ELIAS LOPEZ,

Petitioner,

v.

LORETTA E. LYNCH, ATTORNEY GENERAL,[*]

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Thompson, Selya, and Kayatta,
<u>Circuit Judges</u>.

<u>Michael D. Greenberg</u> on brief for petitioner.
<u>Anthony J. Messuri</u>, Trial Attorney, Office of Immigration Litigation, <u>Benjamin C. Mizer</u>, Acting Assistant Attorney General, Civil Division, and <u>Leslie McKay</u>, Assistant Director, Office of Immigration Litigation, on brief for respondent.

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Loretta E. Lynch has been substituted for former Attorney General Eric H. Holder, Jr. as the respondent.

September 16, 2015

**THOMPSON**, <u>**Circuit Judge**</u>.   Petitioner Giklif Elias Lopez ("Lopez"), a native and national of Colombia, seeks judicial review of a final order of the Board of Immigration Appeals ("BIA") affirming the immigration judge's denial of Lopez's application for withholding of removal and for voluntary departure.   After careful consideration, we deny Lopez's petition for review.

## Background

Lopez entered the United States without admission or parole sometime in late 2000.   While in the United States Lopez had a son, born in Connecticut on November 5, 2004.   In 2005, Lopez left the United States for Canada, where his sister and brother-in-law had been granted asylum.   Lopez filed his own application for asylum in Canada but returned to the United States voluntarily five months later because he missed his young son.   Lopez does not know the status of his Canadian asylum application, which he left pending upon his return to United States.   After returning to the United States in 2006, Lopez remained in the country without interruption.

On May 6, 2010, Lopez was issued a Notice to Appear.   In subsequent written filings with the immigration court, Lopez, through counsel, conceded removability but applied for asylum, withholding of removal and, in the alternative, voluntary departure.   In a hearing before an Immigration Judge ("IJ") on April 11, 2011, however, Lopez's counsel clarified that Lopez was

- 3 -

not pursuing an asylum claim and was applying for withholding of removal and voluntary departure only.

In support of his application, Lopez testified before a different IJ on August 19, 2013. Lopez claimed that he feared the violence in Colombia, specifically guerillas killing and kidnapping people in his hometown of Cali, Colombia. Lopez testified that while living in Colombia he, and other members of his family, were targeted by the guerillas for being part of "a group of black communities" known as "Afro-[Colombians]."[1] At the hearing, Lopez described the "Afro-[Colombians]" as "a group of people that gets together to help each other." Lopez explained that this "Afro-[Colombian]" group held meetings in a private residence in Colombia.

Lopez recounted that sometime in 1994 or 1995 guerillas sent him and one of his brothers threatening letters because of their membership in this "Afro-[Colombian]" group. According to Lopez, one of his brothers, still residing in Colombia, continues to receive threatening letters from the guerillas. Lopez did not provide specific details about the nature of these threats or the content of the letters sent to him and his brother.

---

[1] In the transcript of these proceedings, as well as in Lopez's filings before the BIA and here, "Colombia" and "Afro-Colombian" are frequently spelled "Columbia" and "Afro-Columbian." We have used "Colombia" and "Afro-Colombian" throughout.

- 4 -

Aside from threats, Lopez was never harmed or physically injured while living in Colombia. But, in 1996, while playing basketball with friends, one of Lopez's brothers was shot and killed when guerillas opened fire on the basketball court. Lopez testified that three other people were killed in that shooting. In addition, Lopez's brother-in-law, who was later granted asylum in Canada, was kidnapped by guerillas sometime in 1999 or 2000. Lopez testified that he did not know what motivated the guerillas' attacks on his brother and brother-in-law, but he noted that his brother-in-law had worked in the government. In approximately 2011, two of Lopez's cousins were also killed by a group of guerillas, who shot into a group of people playing soccer. Despite these incidents, Lopez acknowledged that his mother and four of his siblings continue to live in Colombia.

In an oral opinion issued the same day as the hearing, the IJ denied Lopez's application for withholding of removal and voluntary departure.[2] The IJ concluded that Lopez's claim failed for lack of corroborating evidence, noting that Lopez had failed to provide any (admittedly available) corroboration despite the fact that he had been subject to removal proceedings since 2010

---

[2] Before the BIA, Lopez did not challenge the IJ's denial of his application for voluntary departure; nor does he contest it here.

and the removal hearing had been scheduled for over a year.[3] Specifically, the IJ noted Lopez's failure to provide his brother's death certificate, copies of the threatening letters sent to him or to his brother, or, indeed, any letters from his family corroborating any aspect of his claim. The IJ further concluded that even if Lopez was deemed credible and had provided corroborating evidence, he had nevertheless failed to demonstrate any past or likely future persecution.

Lopez appealed to the BIA on September 6, 2013, arguing that he "fear[ed] harm due to the crime and violence in his country" and persecution based, at least in part, on his "membership in a particular social group." Lopez also argued, for the first time, that he faced persecution based on his family membership.

The BIA rejected Lopez's appeal and affirmed the IJ's findings and decision. In addition, it concluded that Lopez had failed to establish that he had been, or was likely to be, targeted due to his family membership. This timely petition for judicial review followed.

**Analysis**

Before us, Lopez contends that the BIA erred first when it determined that Lopez had not met his burden of proving he would

---

[3] Lopez was represented by counsel throughout his removal proceedings.

be persecuted upon his return to Colombia. Second, Lopez argues that his case should be remanded because the IJ and BIA failed to understand that Lopez's claim was based on race.

In immigration cases, this court ordinarily reviews the final decision of the BIA, "[b]ut where, as here, the BIA accepts the IJ's findings and reasoning yet adds its own gloss, we review the two decisions as a unit." Moreno v. Holder, 749 F.3d 40, 43 (1st Cir. 2014) (quoting Xian Tong Dong v. Holder, 696 F.3d 121, 123 (1st Cir. 2012)). We review agency findings of fact, including credibility determinations, under the familiar substantial evidence standard. Chhay v. Mukasey, 540 F.3d 1, 5 (1st Cir. 2008). Under this deferential standard, we will accept all findings of fact "as long as those findings are supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)).

To qualify for withholding of removal, Lopez must demonstrate that, if repatriated, he faces a clear probability of future persecution because of his race, religion, nationality, membership in a particular social group, or political opinion. Costa v. Holder, 733 F.3d 13, 16 (1st Cir. 2013). "This burden can be carried in two ways: the alien can show either that [he]

has suffered past persecution[4] (giving rise to a rebuttable presumption of future persecution) or that, upon repatriation, a likelihood of future persecution independently exists." Arévalo-Girón v. Holder, 667 F.3d 79, 82 (1st Cir. 2012). Either way, Lopez must establish that it is more likely than not that he will be persecuted in Colombia on account of his "Afro-Colombian" or family membership. See id.

In arguing that the BIA erred when it concluded that Lopez did not face "a risk of persecution" upon his return to Colombia, Lopez does not challenge the agency's determination that he failed to produce sufficient corroborating evidence. Rather, he seems (because the petition is far from a beacon of clarity) to argue that, because the IJ made no explicit adverse finding of credibility, Lopez's testimony, standing alone, should have been sufficient to sustain his burden of proof. But the agency has the right to require that Lopez proffer more than uncorroborated statements if such corroboration was readily available. 8 U.S.C. § 1158(b)(1)(B)(ii) ("Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the

___

[4] To prove persecution, Lopez "must demonstrate a certain level of serious harm (whether past or anticipated), a sufficient nexus between that harm and government action or inaction, and a causal connection to one of the statutorily protected grounds." Carvalho-Frois v. Holder, 667 F.3d 69, 72 (1st Cir. 2012).

applicant does not have the evidence and cannot reasonably obtain the evidence."). And "a reviewing court must accept the IJ's determinations with respect to the persuasiveness vel non of the alien's testimony, the availability of corroborating evidence, and the effect of non-production unless the record compels a contrary conclusion." Chhay, 540 F.3d at 6.

Here, the IJ required something more from Lopez than his uncorroborated statements. Lopez offered no such evidence.[5] Nor did he provide an explanation for his failure to provide corroboration that he admitted was available to him. Consequently, the agency determined that Lopez had failed to demonstrate that he had suffered, or was likely to face, persecution in Colombia.

Nothing in the record compels a different conclusion. Although Lopez testified that he had received threatening letters while living in Colombia, he provided no detail regarding these letters and he indicated on the record that he was never physically harmed. "[H]ollow threats, . . . without more, certainly do not compel a finding of past persecution." Moreno, 749 F.3d at 44 (quoting Ang v. Gonzales, 430 F.3d 50, 56 (1st Cir. 2005)).

---

[5] On appeal, Lopez seeks to rely on evidence that was not presented to the agency, but we may not consider evidence not contained in the administrative record. 8 U.S.C. § 1252 (b)(4)(A) (noting that "the court of appeals shall decide the petition only on the administrative record on which the order of removal is based").

Moreover, Lopez did not tie the violence perpetrated against his family to any statutorily protected ground or "weav[e] [his] family's narrative into anything resembling a pattern of systematic mistreatment." Ruiz v. Mukasey, 526 F.3d 31, 37 (1st Cir. 2008). In fact, Lopez testified that he did not know why his brother was killed or why his brother-in-law was kidnapped, and that his cousins were killed because they happened to be playing soccer when guerillas opened fired on the crowd. This testimony does not compel the conclusion "that the unfortunate experiences undergone by the petitioner and [his] family were more than isolated occurrences, unrelated to family [or Afro-Colombian] membership." Id.; Tay-Chan v. Holder, 699 F.3d 107, 112-13 (1st Cir. 2012) ("[F]ear of harm from general conditions of violence and civil unrest does not even establish a well-founded fear of persecution, the asylum standard, much less a clear probability of persecution, the withholding of removal standard.").

Perhaps, the agency "could have teased out of the evidence something resembling a pattern of persecution" but "[g]iven two plausible but conflicting inferences . . . the [agency's] choice between those inferences is by definition supported by substantial evidence." Ruiz, 526 F.3d at 37.

As for Lopez's second appellate argument that the IJ and the BIA failed to understand that his claims were based on race, this issue is not properly before us. Makhoul v. Ashcroft, 387

- 10 -

F.3d 75, 80 (1st Cir. 2004) ("[T]heories not advanced before the BIA may not be surfaced for the first time in a petition for judicial review of the BIA's final order."). In Lopez's briefs before the BIA he did not claim that he faced persecution based on his race. Nor did he argue that the IJ had misunderstood his arguments. Rather, Lopez echoed his earlier statements to the IJ, arguing that he had been threatened "due to his involvement in a community based group for black people," called the "Afro-[Colombians] Group," where he "served as a member."

In his initial application for asylum and withholding of removal, Lopez did indicate -- by checking the box -- that his application was based, in part, on race. Aside from this single notation, however, Lopez did not rely on race, in either his written materials or his testimony before the IJ, when detailing the harm that he and his family had suffered. It is unclear why this argument was abandoned. To the extent that Lopez is arguing that the argument was never abandoned, the IJ's decision made clear that she had not interpreted Lopez's arguments to include race. Nevertheless, Lopez did not argue to the BIA that the IJ had improperly failed to consider his race in denying his withholding of removal application. His failure to present developed argument to the BIA on this theory amounts to a failure to exhaust administrative remedies and, therefore, we are without

jurisdiction to consider this argument.  <u>Ramirez-Matias</u> v. <u>Holder</u>,
778 F.3d 322, 327 (1st Cir. 2015).

For the reasons articulated above, the petition for review is denied.