# United States Court of Appeals
## For the First Circuit

No. 15-1983

RONALDO HERNANDEZ-LIMA,

Petitioner,

v.

LORETTA E. LYNCH,
Attorney General of the United States,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Howard, Chief Judge,
Lynch and Barron, Circuit Judges.

Kevin MacMurray and MacMurray & Associates on brief for petitioner.

D. Nicholas Harling, Trial Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Civil Division, and Anthony P. Nicastro, Acting Assistant Director, Office of Immigration Litigation, on brief for respondent.

September 7, 2016

**LYNCH**, **Circuit Judge**.  Ronaldo Hernandez-Lima petitions for review of the Board of Immigration Appeals' ("BIA") decision to dismiss his appeal of an immigration judge's ("IJ") denial of his application for withholding of removal.  Hernandez-Lima argued that he suffered past persecution and faced a clear probability of future persecution in Guatemala through threats, violence, and extortion on account of both his political opinion and his membership in a particular social group.  He defined his political opinion with reference to his participation in the Democratic Christian Party's ("DCP") campaign around 1998 or 1999, and he defined his particular social group as "members of a family who were persecuted by gang members."  The BIA declared him ineligible for withholding of removal, finding that he failed to establish that any harm he had suffered or would likely suffer in the future was both (1) severe enough to constitute persecution and (2) related to a statutorily protected ground.

Hernandez-Lima now argues that the record evidence would have compelled a reasonable factfinder to reach a contrary conclusion.  We deny his petition.

I.

Hernandez-Lima is a native and citizen of Guatemala.  On or about November 13, 2004, he was admitted to the United States pursuant to a B-2 tourist visa authorizing him to remain in the country until May 12, 2005.  However, he overstayed this

- 2 -

authorization, and on January 4, 2011, the Department of Homeland Security served him with a Notice to Appear, charging him with removability pursuant to 8 U.S.C. § 1227(a)(1)(B).[1]

In pleadings submitted on February 22, 2011 and April 7, 2011, Hernandez-Lima indicated his intent to apply for asylum, withholding of removal, protection under the Convention Against Torture ("CAT"), and, in the alternative, voluntary departure. He ultimately did not apply for asylum, but on December 10, 2013, the IJ entertained Hernandez-Lima's other three applications for relief at a hearing during which he testified. The following summarizes the record evidence derived from that testimony and the ensuing proceedings.

Around 1998 or 1999, when Hernandez-Lima was a high school student in Guatemala, he participated in the DCP's campaign by attending meetings and putting up posters. After an opposing party prevailed in the elections, its members began sending threatening messages, through third parties, to DCP members. Specifically, Hernandez-Lima was told that members of the opposing party had said they were going to kill him for supporting the DCP. Hernandez-Lima's father received similar messages during his many years of work for the municipality, but they never materialized

---

[1] Because Hernandez-Lima conceded his removability on these grounds, we do not concern ourselves with the inconclusive record evidence as to the legality of his two prior entries into the United States.

into physical harm. The messages Hernandez-Lima received never materialized into physical harm either. Hernandez-Lima cites these "political problems" as the reason he left Guatemala for the United States in June 2001.

In November or December 2003, he returned to Guatemala to see his father, who had become ill, but he did not visit his hometown because "[t]hings [had] gotten worse" there. On February 14, 2004, he traveled back to the United States and remained there for five to six months before again returning to Guatemala in August 2004, this time to see his mother, who had also become ill. In September 2004, while still in Guatemala, he was driving toward his hometown when men with covered faces pulled their car in front of his and shot him. After receiving treatment in a hospital, he traveled back to the United States, entering on November 13, 2004.

Hernandez-Lima testified that he could not identify his assailants because he could not see their faces, nor could he be sure of their motive because they did not say anything. But he further testified that he believed his shooting was tied to his past political activities and to efforts to extract money from his family. He speculated that his old political opponents were behind the attack because he "never had any problem with anybody else," and he speculated that his attackers sought money from his family because a few of his relatives had been victims of extortion.

- 4 -

As Hernandez-Lima explained, after his mother's death in 2010, he learned that gangs had been threatening to "kill somebody in [her] family" if she did not pay them money and that she had obliged. Additionally, he explained that his cousin had faced similar threats but had refused to pay and was subsequently murdered along with his wife and her sister. Hernandez-Lima expressed fear that, if he were removed to Guatemala, he would also face extortion and possibly be killed. When asked who he feared would harm him in these ways, he responded, "There's a lot of criminal activity happening in [Guatemala], gangs, political parties."

Despite finding Hernandez-Lima credible, the IJ denied him most of the relief he sought. First, the IJ denied his application for withholding of removal, reasoning that he (1) failed to establish that he suffered past persecution on account of a protected ground because he did not show sufficient harm from the threats he received or a motive for the shooting he endured, and (2) failed to establish a clear probability of future persecution on account of a protected ground because all he showed was a possibility that he would be the victim of a crime unrelated to any protected ground. Second, the IJ denied his application for protection under the CAT because he failed to establish that Guatemalan officials would acquiesce in or turn a blind eye to any torture he might face. Finally, the IJ granted his application

for voluntary departure because he complied with the statutory requirements.

Hernandez-Lima appealed the denial of his application for withholding of removal to the BIA, which affirmed the IJ's findings and dismissed the appeal on July 30, 2015.[2] The BIA rejected Hernandez-Lima's argument that he faced, and more likely than not would face again, persecution in Guatemala through threats, violence, and extortion on account of two protected grounds: (1) his political opinion and (2) his membership in a particular social group, defined as "members of a family who were persecuted by gang members." The BIA's analysis proceeded in three steps.

First, the problems Hernandez-Lima experienced that were arguably on account of a protected ground -- the threats he received from political opponents -- did not cause sufficient harm to constitute past persecution. Second, the problems Hernandez-Lima experienced that arguably did cause sufficient harm to constitute past persecution -- the shooting and his family's extortion at the hands of "criminal gang members" -- were not on account of a protected ground. And third, to the extent Hernandez-Lima was likely to face conditions of crime and violence upon

---

[2] Hernandez-Lima did not appeal the IJ's denial of his application for protection under the CAT; accordingly, the BIA deemed the issue waived, and it has not been raised before us.

returning to Guatemala, it was only because those conditions affect the population at large -- not on account of a protected ground. The BIA then ordered Hernandez-Lima removed from the United States.[3]

This petition for review followed.

II.

Where, as here, the petition challenges only the agency's findings of fact, see Sompotan v. Mukasey, 533 F.3d 63, 68 (1st Cir. 2008), we conduct our entire review under the "highly deferential" substantial evidence standard, which requires us to "uphold the BIA's determination as long as [it] is 'supported by reasonable, substantial, and probative evidence,'" Lopez de Hincapie v. Gonzales, 494 F.3d 213, 218 (1st Cir. 2007) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)). "That the record supports a conclusion contrary to that reached by the BIA is not enough to warrant upsetting the BIA's view of the matter; for that to occur, the record must compel the contrary conclusion." Id.

An alien can seek withholding of removal defensively in response to a charge of removability if "the alien's life or freedom would be threatened in [the] country [to which the alien

_____

[3] The BIA did not reinstate the 60-day voluntary departure period that the IJ had granted Hernandez-Lima, as he had failed to timely submit sufficient proof that he had posted the voluntary departure bond on which the grant was conditioned. See 8 C.F.R. § 1240.26(c)(3)(ii).

- 7 -

would be removed] because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). Hernandez-Lima bears the burden of establishing his eligibility for this relief by demonstrating that it is "more likely than not" that he will be persecuted on account of one of the five protected grounds if removed to Guatemala. See 8 C.F.R. § 1208.16(b)(2); see also, e.g., Costa v. Holder, 733 F.3d 13, 16 (1st Cir. 2013) (equating the standards "more likely than not" and "a clear probability"). Alternatively, he can demonstrate that he has already suffered such persecution in Guatemala and thereby create a rebuttable presumption that he will suffer the same upon removal. See 8 C.F.R. § 1208.16(b)(1). "These two methods are, of course, commonly referred to as past and future persecution." Sompotan, 533 F.3d at 68. Critically, each requires a showing of both harm sufficient to amount to persecution and a "nexus" between the alleged persecution and one of the statutorily protected grounds. Id.

### III.

Substantial evidence supports the BIA's finding that Hernandez-Lima did not establish past persecution, despite presenting evidence of three allegedly qualifying experiences.

First, the BIA had substantial evidence to reject the claim that the threatening messages he received prior to leaving

Guatemala in 2001 constituted persecution. Hernandez-Lima testified that he did not receive threats directly; instead, third parties told him that members of an opposing political group had said they were going to kill him. He also testified that his father had received similar messages over the course of many years and that such messages never materialized into physical harm to either of them.[4]

Death threats rise to the level of persecution only when "so menacing as to cause significant actual suffering or harm." Vilela v. Holder, 620 F.3d 25, 29 (1st Cir. 2010) (quoting Bonilla v. Mukasey, 539 F.3d 72, 77 (1st Cir. 2008)). Evidence that such threats were entirely empty "plainly supports [a] determination" that they did not meet that standard. Ruiz v. Mukasey, 526 F.3d 31, 37 (1st Cir. 2008). Presented with evidence that threats of physical harm were never fulfilled -- "a pertinent datum . . . deserving of weight," id. -- and a total dearth of evidence that they caused any non-physical harm or suffering to weigh against it, the BIA had a substantial basis for concluding that Hernandez-

---

[4] Hernandez-Lima's assertion that he "testified that before he came to the United States for the first time, he was shot . . . by political opponents" mischaracterizes the record evidence. Hernandez-Lima never testified to that effect; to the contrary, he testified that he left Guatemala in June 2001 and that the shooting occurred in September 2004, during his second trip back to Guatemala.

Lima failed to meet his burden of proving that the threats he received were sufficiently menacing.

Importantly, we do not read the BIA's opinion as suggesting that an applicant for relief from removal claiming to have been persecuted by threats is required to make a showing of physical harm. Such a per se rule would directly conflict with our precedent. See, e.g., Ruiz, 526 F.3d at 37 ("[A]n applicant . . . is not obliged to show the infliction of physical harm in order to carry her burden of proving past persecution."). We reiterate simply that the absence of physical harm weighs against a finding that threats amounted to persecution. While never dispositive, this factor may be determinative where, as here, it substantially outweighs any countervailing evidence of non-physical harm or suffering. Reasonable factfinders may differ in how much weight they assign the absence of physical harm in a given case, but as we have said, "hollow threats, . . . without more, certainly do not compel a finding of past persecution." Moreno v. Holder, 749 F.3d 40, 44 (1st Cir. 2014) (emphasis added) (citations omitted).

Second, the BIA had substantial evidence to reject the claim that the September 2004 shooting occurred on account of either proffered protected ground. Hernandez-Lima testified that he did not know who shot him or why they did it. He merely speculated that the shooters may have targeted him for his past

- 10 -

political activities and in relation to the extortion of his family members.

An alien bears the burden of differentiating his alleged persecutors from "common criminals" by establishing a nexus between the harm they inflicted and a protected ground. Lopez de Hincapie, 494 F.3d at 219. Thus, while Hernandez-Lima did not need to identify his attackers, he did need "to furnish some credible evidence of the[ir] motivation." Id.; cf. Cordero-Trejo v. INS, 40 F.3d 482, 488 (1st Cir. 1994) (vacating a BIA decision denying relief where the attackers' identities were unknown but their motivation was reflected in their mid-attack demands that the petitioner discontinue his political activities).

In Lopez de Hincapie, we found the petitioner's testimony as to what "she thought" motivated her antagonists insufficient to carry her burden and certainly insufficient to "compel a finding that the [alleged persecution was] in any way associated with either political opinion or social group membership." 494 F.3d at 219. Hernandez-Lima similarly offered only unsupported theories as to motivation and thus failed to build a record that compelled a finding in his favor. See Morgan v. Holder, 634 F.3d 53, 59 (1st Cir. 2011) ("[A]n alien's speculation or conjecture, unsupported by hard evidence, cannot compel a finding of the necessary link between alleged persecution and a statutorily protected ground."). The BIA was free to reject his

- 11 -

speculation and to conclude that he failed to establish the requisite nexus.

Third, the BIA had substantial evidence to reject the claim that, through the extortion and violence that some of his relatives experienced, Hernandez-Lima suffered from persecution on account of his membership in a particular social group, defined as "members of a family who were persecuted by gang members." To prevail on such a claim, Hernandez-Lima needed to establish, inter alia, that his relatives were harmed because of their family membership. See Ruiz, 526 F.3d at 38. However, he merely testified that they were extorted for money and alluded in his brief to the belief that they had been targeted as a family.

Here, again, Hernandez-Lima offered only an unsupported theory that any harm he suffered was on account of a protected ground. And again, the BIA was not compelled to accept his speculation. See Lopez v. Lynch, 626 F. App'x 12, 16 (1st Cir. 2015) (unpublished opinion) (testimony that the petitioner's brother and cousins were killed and that his brother-in-law was kidnapped, without more, "[did] not compel the conclusion 'that the unfortunate experiences undergone by the petitioner and [his] family were more than isolated occurrences, unrelated to family . . . membership'" (second alteration in original) (quoting Ruiz, 526 F.3d at 37)).

Moreover, a threat that solicits money "invite[s] the inference that [its maker acts out] of greed, not because of [the petitioner's] political opinion or membership in a particular social group." Lopez de Hincapie, 494 F.3d at 219. The BIA made precisely that inference when it concluded that Hernandez-Lima's relatives were victims of extortion by criminal gangs who sought money rather than to harm them because of their family membership. That inference was especially plausible in light of Hernandez-Lima's failure to marshal any evidence inconsistent with it. See id. The BIA's choice of a plausible inference "is by definition supported by substantial evidence." Ruiz, 526 F.3d at 37.

Substantial evidence also supports the BIA's finding that Hernandez-Lima did not establish a clear probability of future persecution. Because his argument that he would suffer from further threats, violence, and extortion of the kind he experienced in the past failed on the basis of the BIA's reasonable finding that those incidents did not qualify as persecution on account of a protected ground, all that remained was his freestanding claim of exposure to widespread crime in Guatemala. The BIA correctly determined that such a claim fails the nexus requirement.

At most, Hernandez-Lima established that he faced a risk of danger from general conditions of strife to which all would be vulnerable, not a clear probability that he would be victimized on account of a protected ground. See Archila v. Holder, 495 F. App'x

- 13 -

98, 101 (1st Cir. 2012) (unpublished opinion).  This is true even if the fact that Hernandez-Lima is, as he suggests, "well-known" and perceived as "wealthy" would make him more likely than others to be victimized.  After all, susceptibility to "economic terrorism" and other crimes is not a protected ground.  López-Castro v. Holder, 577 F.3d 49, 54 (1st Cir. 2009).  Therefore, there is no basis for upsetting the BIA's conclusion. See Archila, 495 F. App'x at 101 ("Although [the petitioner's] fear of returning to the violent conditions that plague Guatemala is understandable, the absence of the requisite statutory nexus is fatal to . . . his . . . withholding of removal claim[].").

The petition for review is denied.