# United States Court of Appeals
## For the First Circuit

No. 24-1782

WUENDY ZAPET-ALVARADO; G.J.A.Z.,

Petitioners,

v.

PAMELA J. BONDI,
Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Montecalvo, Aframe, Circuit Judges,
and Vélez-Rivé,* U.S. District Judge.

Kristian Robson Meyer, with whom Kevin P. MacMurray and MacMurray & Associates were on brief, for petitioners.

Jesse D. Lorenz, Trial Attorney, Office of Immigration Litigation, with whom Brett A. Shumate, Acting Assistant Attorney General, Civil Division, and Brett F. Kinney, Senior Litigation Counsel, were on brief, for respondent.

September 22, 2025

---

\* Of the District of Puerto Rico, sitting by designation.

**AFRAME**, **Circuit Judge**.  Wuendy Celeny Zapet-Alvarado ("Zapet"), a citizen of Guatemala, petitions for review of the administrative denial of her applications for asylum, withholding of removal under the Immigration and Nationality Act ("INA"), and protection under the Convention Against Torture ("CAT").  Zapet argues that the Board of Immigration Appeals ("BIA") erred in affirming the immigration judge's (the "IJ," and collectively with the BIA "the agency") determinations that her asylum application was untimely and that she did not qualify for withholding of removal or CAT protection.  We lack jurisdiction to review the discretionary denial of Zapet's asylum application and determine that substantial evidence supports the denial of her withholding of removal and CAT claims.

## I.

### A.

Zapet and her minor son arrived in the United States on or about August 28, 2021, without visas or official immigration status.  On November 18, 2022, the Department of Homeland Security served Zapet a notice to appear and initiated removal proceedings. Nearly a year later, on October 19, 2023, Zapet applied for asylum, withholding of removal, and CAT protection, with her son as a

derivative applicant.[1]  A few months later, the IJ convened a removal hearing to consider Zapet's applications for relief.

The IJ made the following findings.  Zapet is a native and citizen of Guatemala.  Her home village of Loma Linda is in an area subject to land conflicts between the Tajumulco village and the Ixtahuacan community.  For roughly four years before Zapet arrived in the United States, unidentified hooded men approached Zapet and her husband to obtain their support in the ongoing conflict.[2]  The men did not specify the nature of the support they sought.  However, the men threatened to kidnap Zapet's children if support was not forthcoming.  The threats continued until 2021, when Zapet left for the United States.  Zapet never called the police or otherwise informed the authorities of the men's threats.  No kidnapping occurred and neither she, her husband, nor her children suffered physical harm while in Guatemala.

---

[1]  Zapet's son also applied separately for the same relief on the same grounds asserted by Zapet.  Because Zapet was the lead respondent before the agency and the only one who testified, we will focus our discussion on her.  See Chun Méndez v. Garland, 96 F.4th 58, 61 n.1 (1st Cir. 2024).

[2]  At oral argument in this Court, Zapet's counsel disputed the period over which the threat occurred.  Arguments first raised at oral argument are waived.  See, e.g., Capen v. Campbell, 134 F.4th 660, 675 (1st Cir. 2025).

**B.**

Prior to the removal hearing, Zapet conceded removability. The IJ accepted that stipulation and addressed Zapet's asylum, withholding of removal, and CAT claims.

The IJ denied Zapet's asylum application as untimely. While Zapet did not dispute that she filed her asylum claim after the one-year deadline following her arrival in the United States, 8 U.S.C. § 1158(a)(2)(B), she claimed that she should nonetheless receive relief from that deadline because of extraordinary circumstances, id. § 1158(a)(2)(D). Zapet specifically cited her unawareness of U.S. immigration laws as the extraordinary circumstance. The IJ rejected this argument, concluding that a "lack of knowledge of [i]mmigration laws is not considered an extraordinary circumstance."

The IJ turned next to whether Zapet had established past persecution or a well—founded fear of future persecution as needed to qualify for asylum. The IJ concluded that the hooded men's threats to kidnap Zapet's children did not constitute past persecution because the threats were not serious enough to meet the applicable standard. In support of this conclusion, the IJ observed that the threats were never fulfilled despite occurring over a four-year period, that "the threats were not menacing in nature," and that the threats did not cause Zapet or her family to suffer physical harm.

4

The IJ also rejected Zapet's claims that she had a well-founded fear of future persecution. Zapet had argued that she feared future threats if she were to return to Guatemala based on her indigenous race, political opinion, familial relationships, and landowner status. The IJ noted that Zapet had not: (1) shown a connection between the identified protected grounds and the previous threats; (2) demonstrated how the conflict between the Tajumulco village and the Ixtahuacan community had affected or harmed her; or (3) established why harm should be expected on her return to Guatemala, given that the threats about which she complains went unfulfilled for four years. The IJ also stated that, because Zapet had remained safely in Guatemala for four years while the threats persisted, it was reasonable to believe that she could relocate safely within the country. For these reasons, the IJ concluded that Zapet's asylum claim failed even if timely. The IJ likewise denied her withholding of removal claim, finding that Zapet's failure to establish eligibility for asylum made her necessarily unable to satisfy the "highe[r] burden" required to prove withholding of removal.[3]

---

[3]    While qualifying for asylum requires that "an applicant must establish that she suffered in the past or has a well-founded fear of suffering in the future[,] . . . [t]o obtain withholding of removal, the burden is even higher: The applicant 'must establish a clear probability that, if returned to [her] homeland, [s]he will be persecuted on account of a statutorily protected ground.'" Varela-Chavarria v. Garland, 86 F.4th 443, 449 (1st

5

Finally, the IJ rejected Zapet's application for CAT protection because Zapet failed to demonstrate that she would more likely than not be tortured upon her return to Guatemala or that the Guatemalan government would consent or acquiesce in any torture. As support for this determination, the IJ again relied on Zapet's failure to demonstrate that she suffered physical harm in Guatemala and noted that the threats Zapet received did not involve imminent death or harm to her.

Following the IJ's decision, Zapet appealed each adverse ruling to the BIA. For her untimely asylum claim, Zapet asserted additional reasons to justify extraordinary circumstances warranting relief from the one-year deadline, including lack of education, lack of English skills, unfamiliarity with U.S. culture, and fear of drawing attention to herself as being unlawfully present. The BIA rejected these considerations as constituting extraordinary circumstances "because they are disabilities facing many, if not most, asylum applicants."

The BIA next addressed Zapet's withholding of removal claim. The BIA affirmed the IJ's finding that Zapet had not suffered past persecution. It held that, because the alleged threats "were not accompanied by displays of force or violence,"

---

Cir. 2023) (third and fourth alterations in original) (quoting Sánchez-Vásquez v. Garland, 994 F.3d 40, 46 (1st Cir. 2021)).

6

the threats "were not specific or credible enough under the circumstances to rise to the extreme level of 'persecution[.]'"

The BIA also rejected Zapet's argument that future persecution would "more likely than not" occur. Zapet argued on appeal that the prior threats she experienced, when coupled with country conditions evidence showing the general prevalence of violent crime and conflict in Guatemala and that indigenous persons are particularly susceptible to such violence, sufficed to show requisite fear of future persecution. The BIA disagreed. It concluded that the general country conditions evidence did not tip the scale because it did not establish that "a person in [Zapet's] particular and individualized circumstances will 'more likely than not' suffer persecution in Guatemala."

The BIA likewise affirmed the denial of the CAT claim. It explained that torture requires "severe pain or suffering" to be "intentionally inflicted on a person . . . by, or at the instigation of, or with the consent or acquiescence of, a public official or other person acting in an official capacity." The BIA found that neither general evidence of gender-based and gang-perpetuated violence nor law enforcement's lack of full control over violence in the region sufficed to displace the IJ's "predictive finding that [Zapet] does not personally face an individualized risk of torture in Guatemala . . . much less with official complicity or acquiescence."

7

Zapet timely petitioned this Court for review.

## II.

Zapet argues that the agency erroneously denied her requests for asylum, withholding of removal, and CAT protection. We consider each claim in turn.

## A.

For her asylum claim, Zapet contends that the BIA incorrectly affirmed the IJ's determination that she failed to present extraordinary circumstances sufficient to warrant consideration of her untimely application. The government counters that we lack jurisdiction to review the agency's determination. We agree with the government.[4]

Under the INA, asylum applicants must demonstrate by clear and convincing evidence that their application was filed within one year from the date on which the applicant arrived in the United States. See 8 U.S.C. § 1158(a)(2)(B). However, the agency may still consider an untimely application if the applicant "demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the

---

[4] Zapet also argues that the BIA erred because it did not separately consider whether there was a basis to excuse her child's derivative application for relief. That argument was not presented to the BIA and therefore cannot be considered here. See Sunoto v. Gonzales, 504 F.3d 56, 59 (1st Cir. 2007) ("A petitioner who fails to present a claim to the BIA has failed to exhaust [their] administrative remedies on that issue, and we consequently lack jurisdiction to review the claim.").

8

applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application" within the one-year period.  Id. § 1158(a)(2)(D).

There are two INA provisions that bear on our jurisdiction to review the BIA's determination that Zapet failed to show extraordinary circumstances under section 1158(a)(2)(D). See 8 U.S.C. § 1158(a)(2)(D).  The first is an adjacent provision that provides "[n]o court shall have jurisdiction to review any determination of the Attorney General under [the] paragraph" containing the extraordinary-circumstances exception to the one-year bar.  See id. § 1158(a)(3).  The second is a catchall provision that broadly preserves federal appeals court jurisdiction under the INA for "constitutional claims or questions of law raised upon a petition for review."  See id. § 1252(a)(2)(D).

We previously considered the interplay between these two INA provisions in Chahid Hayek v. Gonzales.  See 445 F.3d 501, 506-07 (1st Cir. 2006).  There, we held that, under section 1158(a)(3), "we have no jurisdiction to review the BIA's decision that [petitioner's] application for asylum was untimely and that the untimeliness was not excused."  Id. at 506.  We determined that section 1252(a)(2)(D) does not affect this rule because "[u]nder the terms of this limited jurisdictional grant, discretionary or factual determinations continue to fall outside

9

the jurisdiction of the courts of appeals, and BIA findings as to timeliness and changed circumstances are usually factual determinations." Id. at 507 (alteration in original) (quoting Mehilli v. Gonzales, 433 F.3d 86, 93 (1st Cir. 2005)).

Zapet argues, however, that under the United States Supreme Court's later decision in Guerrero-Lasprilla v. Barr, 589 U.S. 221 (2020), this Court's jurisdiction to review the BIA's timeliness determination is not so circumscribed. Zapet contends that there, the Supreme Court established that whether a settled fact satisfies a legal standard is a question of law that is reviewable under section 1252(a)(2)(D). Seeking to apply that holding here, Zapet argues that the BIA's rejection of a late-filed asylum application for failing to meet the legal standard for extraordinary circumstances codified under section 1158(a)(2)(B) constitutes a question of law that we may review under section 1252(a)(2)(D). We disagree.

In Guerrero-Lasprilla, the petitioner requested that the BIA equitably toll the filing deadline for reopening a removal proceeding. See 589 U.S. at 225-26. The BIA declined the request, concluding that the petitioner had failed to show the required due diligence to obtain equitable tolling. See id. at 226. The Supreme Court subsequently rejected the contention that the BIA's due diligence determination was a question of fact for which there was no appellate jurisdiction. See id. at 228. The Court

10

explained that a "question[] of law" under section 1252(a)(2)(D) "includes the application of a legal standard to undisputed or established facts," i.e., mixed questions of law and fact. Id. at 227. Employing this holding, the Court concluded that application of settled facts to the due diligence standard was the kind of mixed question for which there was appellate jurisdiction under section 1252(a)(2)(D). See id. at 228, 236.

About four years later, the Supreme Court again considered the scope of our jurisdiction under section 1252(a)(2)(D) in Wilkinson v. Garland, 601 U.S. 209 (2024). There, the Court considered a similar mixed question concerning whether a person seeking cancellation of removal had shown that removal would cause a qualifying spouse, parent, or child to suffer "exceptional and extremely unusual hardship" under title 8, section 1229b(b)(1)(D). Id. at 216-17. The Supreme Court concluded again that this mixed question was reviewable under section 1252(a)(2)(D) as a question of law. See id. at 217, 222. Critically, however, the Court distinguished the "exceptional and extremely unusual hardship" standard in section 1229b(b)(1)(D) from other INA standards that are applied "to the satisfaction of the Attorney General." Id. at 224 (citing 8 U.S.C. § 1182(h)(1)(B), (i)(1)) (emphasis added). The inclusion of such additional language, the Court made clear, should be understood to demonstrate a congressional intent to establish a discretionary

11

judgment not subject to review under section 1252(a)(2)(D). <u>See</u> <u>id.</u> at 224; <u>see also</u> <u>Rahman</u> v. <u>Bondi</u>, 131 F.4th 399, 407-08 (6th Cir. 2025) (applying this reasoning in the context of an "extreme hardship" waiver under 8 U.S.C. § 1182(a)(9)(B)(v), (i)(1)).

Here, we face precisely the kind of situation that <u>Wilkinson</u> identified as a discretionary determination not subject to judicial review. <u>See</u> 601 U.S. at 224. Zapet challenges the BIA's denial of her asylum application, arguing that the agency should have excused her failure to timely file under section 1158(a)(2)(D) given that her "cumulative circumstances . . . are clearly extraordinary and not intentionally created."[5] As discussed, section 1158(a)(2)(D) permits an untimely application for asylum to be considered if the petitioner demonstrates "to the satisfaction of the Attorney General . . .

---

[5]   We note that Zapet's challenge differs from that considered in <u>Escobar</u> v. <u>Garland</u>, 122 F.4th 465, 477 (1st Cir. 2024). There, this Court found jurisdiction to review the agency's denial of asylum relief on the grounds that the application was untimely and did not qualify under the change-of-circumstances exception under section 1158(a)(2)(D). <u>See</u> <u>Escobar</u>, 122 F.4th at 476-77. The Court considered in <u>Escobar</u> whether the text of section 1158(a)(2)(D) permits the agency to impose an additional requirement to qualify for the changed-circumstance exception -- specifically, that a petitioner must prove ineligibility for relief prior to the changed circumstance. <u>See</u> <u>id.</u> The Court found it had jurisdiction to consider this question of law. <u>See</u> <u>id.</u> <u>Escobar</u> therefore was not assessing the agency's exercise of its discretion (whether there was in fact a changed circumstance) but rather the correctness of a predicate legal determination to the exercise of its discretion (whether the agency was applying the correct changed-circumstance standard). <u>See</u> <u>id.</u>

extraordinary circumstances relating to the delay in filing an application within the period." 8 U.S.C. § 1158(a)(2)(D). Congress's specific inclusion in section 1158(a)(2)(D) of the words "to the satisfaction of the Attorney General" demonstrates that the extraordinary-circumstances determination is an unreviewable discretionary judgment. See Wilkinson, 601 U.S. at 224. We therefore conclude, consistent with Wilkinson, that we lack jurisdiction to review the BIA's decision that Zapet failed to establish extraordinary circumstances under section 1158(a)(2)(D). In so holding, we join other courts of appeals that, after Wilkinson, have reached the same conclusion. See Real v. Att'y Gen., 147 F.4th 361, 366-68 (3d Cir. 2025); A.P.A. v. Att'y Gen., 104 F.4th 230, 240-41 (11th Cir. 2024).[6]

**B.**

We next address the BIA's denial of Zapet's application for withholding of removal. Zapet contends that the evidence she presented compelled the BIA to find that she suffered past

---

[6] Zapet also cites Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024), to argue, as we understand it, that the interpretation of the "extraordinary-circumstances standard" under section 1158(a)(2)(D) is "exclusively a judicial function." Loper Bright is irrelevant to this inquiry. There, the Supreme Court held that courts should not give deference to an agency's interpretation of a statute. See 603 U.S. at 412. Here, we are not reviewing the agency's interpretation of a statute, but rather whether we have jurisdiction to review an agency's discretionary application of a statutory standard.

13

persecution and would more likely than not suffer future persecution.

To qualify for withholding of removal, Zapet must show that there is a clear probability that her life or freedom would be threatened in Guatemala because of her "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); see also López-Pérez v. Garland, 26 F.4th 104, 111 (1st Cir. 2022). Zapet bears the burden to establish her eligibility for relief by demonstrating that, if she returns to Guatemala, it is more likely than not that she will be persecuted on one of the five protected grounds. See 8 C.F.R. § 1208.16(b); see also Hernández-Lima v. Lynch, 836 F.3d 109, 113 (1st Cir. 2016). Alternatively, Zapet can show that she already suffered persecution in Guatemala, which would establish a rebuttable presumption of future persecution. See Hernández-Lima, 836 F.3d at 113 (citing 8 C.F.R. § 1208.16(b)(1)). These "two methods" for seeking withholding of removal are "commonly referred to as past and future persecution." Id. (quoting Sompotan v. Mukasey, 533 F.3d 63, 68 (1st Cir. 2008)). Importantly, each requires proof of harm sufficient to amount to persecution and a nexus between the persecution and one of the five statutory grounds. See id.

Before the agency, Zapet presented evidence of both past and future persecution. We begin with the former. An applicant

14

"bears a heavy burden and faces a daunting task in establishing subjection to past persecution." Martínez-Pérez v. Sessions, 897 F.3d 33, 39 (1st Cir. 2018) (internal quotation marks omitted) (quoting Vasili v. Holder, 732 F.3d 83, 89 (1st Cir. 2013)). Persecution exists where "the discriminatory experiences . . . reached a fairly high threshold of seriousness." Id. (quoting Alibeaj v. Gonzales, 469 F.3d 188, 191 (1st Cir. 2006)). It requires "more than mere discomfiture, unpleasantness, harassment, or unfair treatment." Id. at 40 (quoting Vasili, 732 F.3d at 90).

A past persecution claim may be based on threats. See Lobo v. Holder, 684 F.3d 11, 18 (1st Cir. 2012). To constitute persecution, however, the threats must be "so menacing as to cause significant actual suffering or harm." Id. (quoting Vilela v. Holder, 620 F.3d 25, 29 (1st Cir.2010)). "[V]ague or hollow threats, without more, are insufficient to establish persecution." Cano-Gutiérrez v. Bondi, 146 F.4th 26, 32 (1st Cir. 2025). "'[T]he addition of physical violence, although not required, makes a threat more likely to constitute' persecution." Montoya-López v. Garland, 80 F.4th 71, 80 (1st Cir. 2023) (quoting Javed v. Holder, 715 F.3d 391, 396 (1st Cir. 2013)).

The BIA concluded that Zapet's evidence of threats did not meet the standard for past persecution because the threats were not accompanied by violence and her description of them was "not specific . . . enough" to "rise to the extreme level of

15

'persecution[.]'" We review the BIA's finding that Zapet failed to show past persecution under the substantial evidence standard. See Barnica-López v. Garland, 59 F.4th 520, 527 (1st Cir. 2023). Under that standard, we "only disturb the agency's findings if, in reviewing the record as a whole, 'any reasonable adjudicator would be compelled to conclude to the contrary.'" Id. (quoting Gómez-Medina v. Barr, 975 F.3d 27, 31 (1st Cir. 2020)).

Substantial evidence supports the BIA's determination that Zapet failed to demonstrate past persecution. Zapet's testimony regarding the threats at the core of her claim lacked specificity. The record indicates that she did not provide particular details about the threats that she experienced. For example, she was unable to describe what the hooded men wanted her to do and could not recall the timeline of events, including the number of times that she had been threatened. Nor does she dispute that the alleged threats went unfulfilled. Zapet acknowledged that there were no actual kidnapping attempts on her children and admitted that no one in her family suffered physical harm. She also did not describe any non-physical harm or suffering that she endured because of the threats.

"Presented with evidence that threats of physical harm were never fulfilled . . . and a total dearth of evidence that [the threats] caused any non-physical harm or suffering . . . the BIA had a substantial basis for concluding that [Zapet] failed to

meet [her] burden of proving that the threats [she] received were sufficiently menacing." Hernández-Lima, 836 F.3d at 114. There may be occasions in which threats without proof of physical harm are sufficiently menacing to constitute persecution. See, e.g., Ruiz v. Mukasey, 526 F.3d 31, 37 (1st Cir. 2008) ("[A]n applicant . . . is not obliged to show the infliction of physical harm in order to carry her burden of proving past persecution."). But where, as here, the proof permits the conclusion that the applicant suffered "hollow threats," the record "do[es] not compel a finding of past persecution." Hernández-Lima, 836 F.3d at 114 (emphasis omitted) (quoting Moreno v. Holder, 749 F.3d 40, 44 (1st Cir. 2014)).

We similarly conclude that the BIA's rejection of Zapet's claim that she would more likely than not be faced with future persecution was supported by substantial evidence. Because, as already discussed, the BIA made a supportable determination that the threats themselves do not constitute persecution, Zapet's only remaining argument is that the circumstances in Guatemala are so dangerous that she should not be required to return. In support of this contention, Zapet submitted information about country conditions in Guatemala.

Substantial evidence supports the finding that Zapet did not show any individual circumstances that make it likely that she will face persecution were she to return to Guatemala. The country

17

conditions reports identify difficult aspects of life in Guatemala, but the record lacks evidence showing how these difficulties apply to Zapet. See Bopaka v. Garland, 123 F.4th 552, 562 (1st Cir. 2024) (finding country conditions reports insufficient for failing to proffer particularized facts relating to petitioner's claims).

Additionally, the record evidence does not compel a finding that Zapet would face danger if she relocated within Guatemala from the area where she previously lived. Cf. Hernández-Méndez v. Garland, 86 F.4th 482, 489 (1st Cir. 2023) (declaring in the context of asylum, which contains a more petitioner-friendly standard than withholding of removal, that "[a] petitioner does not have a well-founded fear of persecution if [she] could 'avoid persecution by relocating to another part of [her] country of nationality . . . if under all the circumstances it would be reasonable to expect [her] to do so.'" (quoting 8 C.F.R. § 1208.13(b)(2)(ii))). In short, because Zapet's claim relies mostly on "[g]eneralized country conditions reports that do not shed light on [her] particular situation," Rodrigues v. Garland, 124 F.4th 58, 66 (1st Cir. 2024), we cannot say on this record that the agency was compelled to find that Zapet would more likely than not suffer future persecution in Guatemala. For these reasons, we leave undisturbed the BIA's denial of Zapet's withholding of removal claim.

18

## C.

Finally, we address the BIA's denial of Zapet's application for CAT relief. For Zapet to succeed on her CAT claim, she would need to prove that if she returned to Guatemala, it is more likely than not that she would be tortured by the Guatemalan government or with the Guatemalan government's consent or acquiescence. Mayancela v. Bondi, 136 F.4th 1, 6 (1st Cir. 2025). A finding of torture requires, among other elements, proof that a person will suffer severe physical pain or mental pain or suffering from an intentionally inflicted act. Samayoa Cabrera v. Barr, 939 F.3d 379, 382 (1st Cir. 2019). The BIA endorsed the IJ's finding that Zapet had failed to show that she "personally face[d] an individualized risk of torture . . . much less with official complicity or acquiescence."

The BIA's determination again is supported by substantial evidence. Zapet says that she was threatened with forced conscription and the risk of her children's kidnapping. But, as we have already noted, the threats Zapet experienced did not manifest in actions against her or her children despite her refusal to comply with her perpetrators demands, and she has shown no reason to expect more severe treatment were she to return. See Méndez v. Garland, 67 F.4th 474, 487 (1st Cir. 2023) (concluding that there was substantial evidence to reject a CAT claim because the evidence fell short of torture where the record showed that

19

the past persecution consisted of "death threats, intimidation, and non-life-threatening physical violence"). Moreover, Zapet's reliance on generalized facts from country conditions reports is insufficient to establish that she would be subject to torture with the consent or acquiescence of the government. See Méndez-Barrera v. Holder, 602 F.3d 21, 28 (1st Cir. 2010) (upholding the denial of CAT protection where "petitioner failed to proffer any particularized facts relating to her specific claim that she would face a likelihood of government-sanctioned torture").

### III.

For the reasons stated, the petition for review is **dismissed** in part and **denied** in part.